A93A1226. DRIGGERS et al. v. CONTINENTAL GRAIN COMPANY.

(435 SE2d 722)

BIRDSONG, Presiding Judge.

The Driggers, father and son, entered into a credit extension agreement in the form of a promissory note with appellee-plaintiff Continental Grain Company (CGC), to finance the purchase of feed for the Driggers' swine raising business. Pursuant to a written security agreement, each pledged his swine as collateral. Alleging that the Driggers were in default, CGC filed suit, seeking both a recovery on the note and a writ of possession to foreclose on its security interest in the Driggers' swine. Before the Driggers answered, a writ of possession was issued, all swine were removed from each debtor's farm and sold, and the proceeds were delivered to CGC. The Driggers denied the material allegations of the complaint and counterclaimed for tortious interference with business relations and wrongful foreclosure upon certain swine not securing the debt at issue. Their motion to set aside the writ of possession was denied. CGC subsequently moved to interplead Bostic, who claimed that some of the swine levied on by CGC were in fact owned by him. After discovery, CGC moved for partial summary judgment as to the Driggers' counterclaims. This motion was granted by the trial court. Defendants Marvis W. Driggers, Sr., and Bostic appeal. *Held*:

1. Driggers' counterclaim contended the security agreement covered only those swine owned jointly by the debtors and kept by the junior Driggers, so that levy upon swine kept by the senior Driggers was unauthorized by the security agreement. The grant of partial summary judgment as to this counterclaim is enumerated as error.

Each Driggers was a party to the security agreement. The description of the collateral in the security agreement is: "*All* swine now owned or hereafter acquired" by the debtor, as well as the "proceeds and products from any or all of them." (Emphasis supplied.) The writing makes no mention of any limitation of the security interest to swine jointly owned. " 'The question of the sufficiency of description of [collateral] in a [security agreement] is one of law, for the court; that of the identity of the property mortgaged is one of fact, to be decided by the jury.' [Cits.]" *Bank of Cumming v. Chapman*, 245 Ga. 261 (264 SE2d 201). Nevertheless, where "the jury can draw but one conclusion, such [fact] question can be resolved as a matter of law through summary judgment. [Cits.]" *Kubota Tractor Corp. v. C & S Nat. Bank*, 198 Ga. App. 830, 838 (4) (403 SE2d 218).

The description "all swine now owned or hereafter acquired" is not ambiguous. Although the Driggers promised to keep the swine at a specified location, namely the farm of Marvis Driggers, Jr., that covenant did not operate to *limit* the collateral, previously pledged as "all swine," to "all swine kept at Marvis Driggers, Jr.'s, farm." The collateral pledged to secure credit extended to purchase the feed included all swine owned by *either* debtor, wherever located. There is no genuine issue of material fact as to the reach of the security agreement. As to the swine actually owned by appellant or his son, the trial court correctly granted summary judgment against them on their counterclaim for wrongful foreclosure. The trial court's order does not purport to reach any claim Bostic might have against CGC for wrongful levy upon swine possessed by Marvis Driggers, Sr., but allegedly owned by such third parties as Bostic. Such issues remain pending before the trial court and we express no opinion thereon.

2. The partial grant of summary judgment as to appellants' counterclaim for tortious interference with business relations is enumerated as error. In support of this counterclaim, appellants alleged that CGC wrongfully contacted someone who had purchased swine from appellants, and that the proceeds of that sale were wrongfully withheld from appellants. The record reveals that the buyer stopped payment on the check given to Marvis Driggers, Jr., and instead paid the proceeds of the sale into the registry of the court.

As noted above, a security interest was expressly granted in the proceeds of the Driggers' swine. Compare OCGA § 11-9-203 (3). " 'Proceeds' includes whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds." OCGA § 11-9-306 (1). The Driggers agreed that with respect to proceeds, CGC, as the secured party, "may at any time notify account debtors that the accounts receivable have been assigned to [CGC] and shall be paid to [CGC]."

In order to state a claim for intentional interference with busi-

ness relations, it is necessary to show, in part, that the alleged inter-meddler acted improperly and without privilege. *Nilan's Alley v. Ginsburg*, 208 Ga. App. 145, 146 (2) (430 SE2d 368). "Since [CGC] merely asserted its contractual rights in [contacting the buyer, i.e., the account debtor, and demanding that proceeds from Driggers' sale of collateral be turned over to it], the trial court correctly granted summary judgment as to the counterclaim for tortious interference with business relations. [Cit.]" *Russell Corp. v. BancBoston Financial Co.*, 209 Ga. App. 660, 663 (4) (434 SE2d 716) (1993).

3. Remaining enumerations have been considered and are found to be rendered moot by our previous holdings.

*Judgment affirmed. Pope, C. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 1, 1993 —
RECONSIDERATION DENIED SEPTEMBER 17, 1993 

*Stubbs & Associates, M. Francis Stubbs*, for appellants.

*Inglesby, Falligant, Horne, Courington & Nash, Sam P. Inglesby, Jr., Doremus, Jones & Smith, Bobby T. Jones*, for appellee.