A97A2183. DISASTER SERVICES, INC. v. ERC PARTNERSHIP et al.
(492 SE2d 526)

ELDRIDGE, Judge.

On May 6, 1991, ERC Partnership ("ERC"), defendant-appellee, entered into an asset purchase agreement with Eastern Air Lines ("EAL"), after EAL went bankrupt and ceased operations, to buy its leasehold interest in its Reservation Building for $1,050,000. The building was owned by the John D. and Catherine T. MacArthur Foundation ("Foundation"). On June 24, 1991, the bankruptcy court approved this sales agreement. ERC began negotiations with the Foundation to purchase the building subject to EAL's leasehold interest. Under the lease, EAL had to maintain fire insurance and keep the building in good repair.

In July 1991, prior to the closing of the sale of the lease by EAL to ERC under the asset purchase agreement, the Reservation Building was badly damaged by fire. The asset purchase agreement between EAL and ERC was amended to delay closing until EAL had the fire damage repaired.

On October 21, 1991, Disaster Services, Inc. ("DSI"), plaintiff-appellant, entered into a contract with EAL, to be performed in three phases, to repair the fire damage to the building, as required by the lease and the amendment to the asset purchase agreement with ERC. DSI alleges that, had all three phases of the contract been performed, it would have received a total sum of $1,005,801. On October 23, 1991, EAL instructed DSI to commence work, and by November 1991, the first phase of the work had been completed.

In early December 1991, ERC requested that EAL delay phases II and III of the contract with DSI to repair the fire damage so that ERC could negotiate a purchase of the fee simple interest in the building from the Foundation and have total ownership and control of the building. On December 13, 1991, ERC and EAL entered into an amendment to the asset purchase agreement in order to delay phases II and III of the repair contract until January 10, 1992. On January 9, 1992, ERC successfully negotiated a purchase agreement with the Foundation for an "as-is" purchase of the building with an assignment of any interest in the insurance proceeds to ERC. The closing of both purchases by ERC from EAL and the Foundation was on March 18, 1992. On March 24, 1992, ERC and EAL entered into an assignment and assumption of the lease from the Foundation and put into

effect the May 6, 1991 asset purchase agreement as amended. Such final agreement relieved EAL of any duty to have the building repaired and assigned to ERC any rights to the insurance proceeds. Under the repair contract with DSI, EAL retained the right to cancel the agreement at any time and to pay for the work performed plus a profit, which EAL exercised; EAL terminated the contract, canceling work by DSI on phases II and III. On June 20, 1992, EAL and ERC settled all claims, liens, and obligations between each other for $300,000, after approval of the bankruptcy court. ERC never assumed any liabilities to DSI under its agreement with EAL.

On November 27, 1995, DSI sued ERC for tortious interference with the contractual relations with EAL, tortious interference with business relations with EAL, and tortious interference with prospective business relations with EAL. ERC timely answered. On November 20, 1996, ERC moved for summary judgment. On March 7, 1997, after hearing oral argument on March 3, the trial court granted summary judgment.

DSI's five enumerations of error all assert different reasons that the trial court erred in granting summary judgment. We do not agree.

While ERC was not a party to the agreement between EAL and DSI and was not specifically named as a third-party beneficiary within the meaning of Georgia contract law, nonetheless, ERC was not a stranger to the contractual relationship between EAL and DSI. ERC had a pre-existing contract for the asset purchase of the leasehold interest in the Reservation Building with EAL and had begun negotiations for the purchase of the property subject to the lease with the Foundation. The delay in the closing of the asset purchase of the leasehold was for the benefit of ERC, so that the building could be restored to its pre-fire condition as required, not only by the asset purchase agreement, but also by the duties under the lease from the Foundation. ERC was as much a legitimately interested party to the contract between EAL and DSI as was the Foundation, because ERC would receive the Reservation Building upon closing, either "as-is" or fully repaired by DSI.

Tortious interference claims, whether asserting interference with contractual relations, business relations, or potential business relations, share certain common essential elements: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff. *Renden, Inc. v. Liberty Real Estate &c.*, 213 Ga. App. 333

(444 SE2d 814) (1994); *Green v. Johnston Realty*, 212 Ga. App. 656 (442 SE2d 843) (1994); *Integrated Micro Systems v. NEC Home Electronics (USA)*, 174 Ga. App. 197, 200 (3) (329 SE2d 554) (1985).

For purposes of this type of tort, "privilege" means legitimate economic interests of the defendant or a legitimate relationship of the defendant to the contract, so that it is not considered a stranger, interloper, or meddler. *Driggers v. Continental Grain Co.*, 210 Ga. App. 293, 295 (2) (435 SE2d 722) (1993); *Nilan's Alley v. Ginsburg*, 208 Ga. App. 145, 146 (2) (430 SE2d 368) (1993). The defendant must have a bona fide economic interest in the contract or relationship with one of the parties to the contract. *Renden*, supra; *Jet Air v. Nat. Union Fire Ins. Co.*, 189 Ga. App. 399, 403 (375 SE2d 873) (1988). Where appropriate circumstances appear from the evidence that a defendant had a legitimate interest in either the contract or a party to the contract, the defendant is not a stranger to the contract, although the defendant is a "non-signer of a particular contract[, it is not] a stranger to the contract itself or to the business relationship giving rise thereto and underpinning [the contract]." *Renden*, supra at 336 (2) (b). A direct economic interest in the contract existed for ERC, while not rising to a third-party beneficiary status under Georgia contract law, which made it a clear beneficiary to the contract between EAL and DSI for tort law purposes. See *Jefferson-Pilot Communications Co. v. Phoenix City Broadcasting &c.*, 205 Ga. App. 57, 60 (421 SE2d 295) (1992); see also *Lake Tightsqueeze, Inc. v. Chrysler First Financial Svcs. Corp.*, 210 Ga. App. 178, 181 (5) (435 SE2d 486) (1993); *Shepard v. Fed. Land Bank of Columbia*, 205 Ga. App. 254, 258 (3) (421 SE2d 763) (1992). Thus, all actions by ERC were in the furtherance of a pre-existing contractual relationship with EAL and the completion of a pre-existing contract formation with the Foundation to purchase the realty; such facts and circumstances created a privileged relationship with EAL and with the contract between EAL and DSI.

The conduct of ERC was not tortious, wrongful, or improper action. See *Singleton v. Itson*, 192 Ga. App. 78 (383 SE2d 598) (1989). ERC began the contract with EAL and the contract formation with the Foundation, not only prior to the fire, but also prior to EAL entering into the contract with DSI to perform the repairs in three phases, a contract which was cancelable at will. ERC had the right, as well as the power, to do what it ultimately did, i.e., buy out the interests of EAL and the Foundation of the realty "as-is" and take an assignment to the fire insurance proceeds, prior to the contract between EAL and DSI; obviously, DSI could not claim that ERC's actions deprived it of a potential contractual or business relationship with EAL.

Improper actions constitute conduct wrongful in itself; thus, improper conduct means wrongful action that "generally involve[s]

predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." *American Bldgs. Co. v. Pascoe Bldg. Systems*, 260 Ga. 346, 349 (2) (392 SE2d 860) (1990).

The exercise of an absolute legal right is not and cannot be considered an interference with a contractual or potential contractual relationship. See *Singleton v. Itson*, supra; *J. C. Penney Co. v. Davis & Davis, Inc.*, 158 Ga. App. 169 (279 SE2d 461) (1981). The fact that the negotiation and execution of the contracts between ERC, EAL, and the Foundation had an adverse economic impact upon DSI, because EAL exercised its absolute right to terminate the contract with DSI, does not give rise to improper conduct. See *Forehand v. Perlis Realty Co.*, 198 Ga. App. 165 (400 SE2d 644) (1990); *First Mtg. Corp. of Va. v. Felker*, 158 Ga. App. 14 (279 SE2d 451) (1981). ERC had the absolute right to amend and close its asset purchase agreement with EAL, even though it had a negative affect upon DSI.

On motion for summary judgment, ERC introduced evidence which pierced the pleadings of DSI, showing that under all the theories of liability, the conduct of ERC was, not only proper, but privileged and that DSI could present no evidence to the contrary; thus, defendant showed that an essential element of plaintiff's case could not be proven under any theory. Under OCGA § 9-11-56 (e), the burden of producing evidence shifted to DSI, which failed to make out a disputed issue of material fact for a jury determination, so that it was proper for the trial court to determine as a matter of law that ERC was entitled to the grant of summary judgment. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 8, 1997 —
RECONSIDERATION DENIED OCTOBER 7, 1997 —

*Huprich & Associates, Don C. Huprich, Philip S. Andrews*, for appellant.

*Alston & Bird, Robert D. McCallum, Jr., Cynthia L. Counts*, for appellees.