A98A1562. CARROLL ANESTHESIA ASSOCIATES, P.C.
v. ANESTHECARE, INC. et al.
(507 SE2d 829)

Judge Harold R. Banke.

Carroll Anesthesia Associates, P.C. ("CAA") sued AnestheCare, Inc., Cell Saver, Inc. d/b/a AnestheCare, David Laguardia, Paul Duso, and Roger Bigham (collectively "AnestheCare"). CAA appeals the summary judgment awarded to AnestheCare.

CAA and AnestheCare were business competitors vying to supply anesthesia services to the Tanner Medical Center ("Tanner") area. For a number of years, CAA enjoyed an exclusive contract with Tanner and remained the primary provider until 1993. With each of its five certified registered nurse anesthetists ("CRNAs"), CAA had executed employment agreements. These employment contracts contained post-employment covenants prohibiting the CRNAs from practicing as nurse anesthetists within varying radii of Tanner for up to a two year period.[1] Notwithstanding these non-compete covenants, when four of the CRNAs left CAA and commenced their employment with AnestheCare in November and December 1993, AnestheCare executed indemnification agreements with each of them. Each "Indemnity Agreement" expressly recited that it was "in consideration of the execution of the employment contract with AnestheCare." According to Roger Bigham, a principal owner of AnestheCare, AnestheCare's legal counsel reviewed the indemnification agreements before they were executed.[2]

CAA's fifth nurse anesthetist, Danny Montgolf, who did not accept AnestheCare's offer of employment, testified that during the summer of 1993, representatives of AnestheCare urged him to quit CAA as they attempted to recruit all five CAA nurses. Montgolf testified that during this recruitment, the restrictive covenants in the CAA contracts were discussed. CRNA Marshall testified that even while still employed by CAA, she was assured "from the very begin-

---

[1] These four CRNAs were Patricia Marshall, Jacqueline Pieratti, Joyce Middlebrooks, and Mark Schmitz. Two contracts specified a five mile radius and an eighteen month post-employment period. Another contract specified a twenty-five mile radius and an eighteen month term while the fourth one provided for a thirty-five mile radius and a two year period.

[2] Each indemnity agreement provides "WHEREAS, [name of CRNA] and Cell Saver, Inc. d/b/a AnestheCare ("AnestheCare") desire to enter into an employment agreement . . . and WHEREAS, [name of CRNA]'s current employer, H. Gilbert Maddox, Jr., M.D./Carroll Anesthesia Associates, P.C., may initiate litigation against [name of CRNA]. . . . In consideration of [name of CRNA]'s execution of the "CRNA EMPLOYMENT AGREEMENT" and other good and valuable consideration; AnestheCare agrees to pay all attorney's fees, costs and expenses of any kind incurred by [name of CRNA] and any judgment rendered against [name of CRNA] for damages of any kind, arising or resulting from any claim asserted against [name of CRNA] because of the execution of the 'CRNA EMPLOYMENT AGREEMENT' by H. Gilbert Maddox, Jr., M.D., Carroll Anesthesia Associates, P.C. or any person or entity related thereto, and to indemnify and hold [name of CRNA] harmless from same."

ning of the discussions," that AnestheCare would provide indemnification to protect her from any legal action based on her employment agreement with CAA. Similarly, CRNA Pieratti admitted that her willingness to work for Cell Saver was conditioned on the indemnity agreement.

In May 1994, AnestheCare reassigned the four CRNAs to work at Tanner. Although the CRNAs knew this arrangement would violate the non-compete agreement, they relied upon the indemnification agreement in accepting that risk and upon legal advice provided by AnestheCare that the restrictive covenants were unenforceable. After Schmitz, Middlebrooks, Pieratti, and Marshall breached the terms of the restrictive covenants, CAA sought injunctive relief. In August 1994, when the Superior Court of Carroll County granted injunctive relief to CAA, it determined that the non-compete agreements were valid and enforceable.[3] AnestheCare provided the CRNAs with legal representation.

In a separate and subsequent action filed in September 1995, CAA sued AnestheCare but not the CRNAs for tortious interference with contract and business relations. CAA alleged that AnestheCare induced these employees to discontinue their employment and to breach the non-compete agreements in their employment contracts. CAA asserted that by executing indemnification agreements with the four CRNAs and by agreeing to assume liability for any expenses of litigation and any judgment, AnestheCare induced them to breach their non-compete agreements.

After the trial court granted summary judgment to AnestheCare without conducting a hearing as requested by CAA, we reversed due to the violation of USCR 6.3.[4] The opinion, however, did not reach the underlying substantive issues. Upon remand, the trial court held a hearing and finding no material factual issues in dispute awarded summary judgment. CAA appeals. *Held*:

1. CAA contends that genuine issues of material fact remain to be tried as to AnestheCare's liability for its tortious interference with contract and business claims. We agree.

To establish a cause of action for wrongful interference with contractual relations, in addition to demonstrating the existence of a valid contract, a plaintiff must show that the defendant: (1) acted improperly and without privilege; (2) acted purposely and maliciously with the intent to injure; (3) induced a third party not to enter into or to continue a business relationship with the plaintiff; and (4) caused the plaintiff some financial injury. *Lake Tightsqueeze,*

---

[3] The trial court was affirmed without opinion by this Court.

[4] *Carroll Anesthesia Assoc., P.C. v. AnestheCare, Inc.*, 230 Ga. App. 269, 270 (1) (495 SE2d 897) (1998).

*Inc. v. Chrysler First Fin. Svcs. Corp.*, 210 Ga. App. 178, 181 (5) (435 SE2d 486) (1993). "Malice" in this context means any unauthorized interference or any interference without legal justification or excuse. *Arford v. Blalock*, 199 Ga. App. 434, 441 (13) (405 SE2d 698) (1991). "Persuading a person to break a contract for the . . . purpose of . . . benefiting the defendant at the expense of the plaintiff is a malicious and actionable act if injury arises from it. [Cit.]" Id.

Further, interference with contractual relations, such as inducing one to breach his contract, is an actionable tort. *McDaniel v. Green*, 156 Ga. App. 549, 550 (1) (275 SE2d 124) (1980). Where the interference retards performance of the duties under the contract, it is actionable. *Artrac Corp. v. Austin Kelley Advertising*, 197 Ga. App. 772, 774-775 (2) (399 SE2d 529) (1990).

Without question, the post-employment restrictive covenants were legally enforceable and the breach of these terms by the CRNAs triggered an order granting injunctive relief to CAA. Notwithstanding AnestheCare's claim to the contrary, this is not simply a case involving the hiring of another employer's at-will employees. See *American Bldgs. Co. v. Pascoe Bldg. Systems*, 260 Ga. 346, 348-349 (2) (392 SE2d 860) (1990) (competitor's fair competition privilege can be lost in certain circumstances). Instead, at issue is whether AnestheCare induced and encouraged CAA's former employees to breach valid post-employment restrictions. Compare *Orkin Exterminating Co. v. Martin Co.*, 240 Ga. 662, 666-667 (1) (242 SE2d 135) (1978) (fair competition privilege not violated by soliciting at-will employees where no interference with contractual rights occurs).

Therefore, a jury must decide whether by indemnifying the CRNAs against any judgment obtained by CAA, AnestheCare interfered with the contracts and encouraged the CRNAs to breach the post-termination terms. The trial court's entry of judgment on this issue must be reversed. Compare *Combs v. Edenfield*, 184 Ga. App. 75, 77 (360 SE2d 743) (1987).

Similarly, we find that material issues of disputed fact foreclosed summary judgment on the tortious interference with business claim. AnestheCare had an absolute right to set up a business competing with CAA. *Kitfield v. Henderson, Black & Green*, 231 Ga. App. 130, 134 (4) (498 SE2d 537) (1998). But the privilege of fair competition protects a competitor who solicits another employer's at-will employee only when the standards in Restatement of Torts, § 768 are followed. *Contractors' Bldg. Supply v. Gwinnett Sash & Door*, 199 Ga. App. 38, 39 (2) (403 SE2d 844) (1991). The privilege is not applicable where a competitor "[destroys] or [inflicts] substantial injury by means of attracting away all or a large percentage of personnel upon whom [the employer] must depend to function, especially if other circumstances [are present]." *Architectural Mfg. Co. v. Airotec*, 119 Ga.

App. 245, 250-251 (2) (166 SE2d 744) (1969).

CAA offered evidence that AnestheCare attempted to persuade the entire nurse anesthetist staff of CAA, upon which CAA relied, to leave en masse and join AnestheCare, a competing firm. See *Architectural Mfg. Co.*, 119 Ga. App. at 248 (1). Compare *Orkin Exterminating Co.*, 240 Ga. at 665. CAA showed that its monthly billings plummeted drastically in 1994 from those of 1993. Dr. Gilbert Maddox testified, without contradiction, that AnestheCare made a concerted effort to deprive CAA of all its employees so that CAA would have nobody left to do the work. Dr. Maddox testified that AnestheCare enticed his employees by assuring them that after CAA was destroyed, AnestheCare would bring them back to work at Tanner. Montgolf attested that it was AnestheCare's plan to obtain all five of the CRNAs from CAA.

In light of some evidence of a plan or scheme designed to impair CAA's financial position and to induce breaches of employment contracts, we find that AnestheCare was not entitled to judgment as a matter of law. Compare *Contractors' Bldg. Supply*, 199 Ga. App. at 40 (2). Notwithstanding AnestheCare's contention to the contrary, whether Dr. Maddox contributed to the demise of CAA by refusing to join a PPO or by antagonizing members of the medical community, are disputed factual issues.

2. CAA contends that the principles of res judicata and collateral estoppel are inapplicable. We agree.

Notwithstanding AnestheCare's claim to the contrary, the action in federal district court did not foreclose the underlying action. Collateral estoppel requires the identity of issues and of the parties or their privies in both actions, elements lacking in this case. *Wickliffe v. Wickliffe Co.*, 227 Ga. App. 432, 433-434 (1) (489 SE2d 153) (1997). In the federal diversity case, CAA sued Quorum Health Resources, Inc., the management company of Tanner Medical Center. CAA sought damages from Quorum for, inter alia, fraud and libel. (1:93-CV-2185, N.D. Ga.) The heart of CAA's complaint pertained to a purportedly libelous statement appearing in a June 1993 hospital publication. In fact, the federal action was filed several months before the four CRNAs resigned from CAA. See *Miller v. Steelmaster Material Handling Corp.*, 223 Ga. App. 532, 533 (1) (478 SE2d 601) (1996) (statutory bar under OCGA § 9-2-5 (a) applies only to same cause of action against same party).

Nor did CAA's earlier action seeking injunctive relief foreclose the instant suit which was likewise not asserted against the same parties. "Before collateral estoppel will bar consideration of an issue, that issue must actually have been decided." *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 867 (2) (463 SE2d 5) (1995). No judgment has yet been rendered on CAA's tort claims.

*Judgment reversed. Johnson, P. J., and Smith, J., concur.*

DECIDED OCTOBER 6, 1998.

*J. Hue Henry, Christopher L. Casey,* for appellant.
*Glass, McCullough, Sherrill & Harrold, Geoffrey H. Cederholm,* for appellees.