A01A0882. FIRST CITIZENS BANK OF CLAYTON COUNTY
v. ALL-LIFT OF GEORGIA, INC.
(555 SE2d 1)

BARNES, Judge.

First Citizens Bank of Clayton County ("the bank") appeals from the entry of summary judgment against it in the amount of $21,090.65 for improper payment of forged checks. Because the trial court properly held the bank strictly liable, we affirm.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in this light, the record in this case shows that All-Lift of Georgia, Inc. sued the bank for paying checks forged by an All-Lift employee during a 19-month time period. All-Lift then moved for partial summary judgment with respect to checks appearing on statements that were not mailed to All-Lift by the bank. The bank opposed the motion and filed its own motion for summary judgment on all of the forged checks it had paid. All-Lift subsequently stipulated that partial summary judgment should be entered in favor of the bank for checks appearing on statements that the bank mailed to it. Thus, the trial court considered summary judgment only with respect to those checks appearing on statements the bank did not mail to All-Lift.

On appeal, both parties rely upon OCGA § 11-4-406 to support their claim that they were entitled to summary judgment. This Code provision provides, in pertinent part:

> Customer's duty to discover and report unauthorized signature or alteration. (a) A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount, and date of payment. . . . (c) If a bank sends or makes available a statement of account or items pursuant to subsection (a) of this Code section, the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the

customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts. (d) If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by subsection (c) of this Code section, the customer is precluded from asserting against the bank: (1) The customer's unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and (2) The customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding 30 days, in which to examine the item or statement of account and notify the bank. . . . (f) Without regard to care or lack of care of either the customer or the bank, a customer who does not within 60 days after the statement or items are made available to the customer (subsection (a) of this Code section) discover and report the customer's unauthorized signature on or any alteration on the face of the item or who does not within one year from that time discover and report any unauthorized indorsement or alteration on the back of the item is precluded from asserting against the bank the unauthorized signature, indorsement, or alteration.

Both parties agree that the resolution of this case turns on whether the unmailed statements were "made available" by the bank. The bank asserts that the affidavit of its branch manager demonstrates that the statements were "made available." She averred that: "The policy of the Bank is that it will not 'hold' a monthly account statement of any customer in the absence of a written request to do so from the individual customer himself, or, in the case of a corporate customer, from an individual authorized to act on behalf of the corporation." When she reviewed the bank's records, she determined that it had held ten consecutive months of All-Lift's statements. According to the manager, these statements were "fully available to the customer at any time." The customer could pick them up at the bank after signing a receipt for them. Finally, she stated that:

> While the Bank has not yet located any "hold statement authorization" cards in its records related to Plaintiff, that does not mean that there were not records made. In fact, I

believe that there were records, since the Bank would not hold monthly statements or items in the absence of a written request. However, I, along with other employees, have searched our files, and we have thus far been unable to locate any records to indicate who requested on behalf of Plaintiff that these statements be held.

The president of All-Lift submitted an affidavit in which he asserted that he was the only person authorized to give instructions with regard to the account and that he never authorized the bank to hold the statements.

The bank asserts it was entitled to summary judgment under OCGA § 11-4-406 because its statements were "made available" to All-Lift in two ways: (1) it actually held the statements, and (2) it complied with its internal policy of holding the statements based upon a written request by an authorized person.

After carefully reviewing the language and intent behind OCGA § 11-4-406, we find that a bank does not make statements available within the meaning of this Code section by merely holding statements and doing nothing more. Adopting the bank's position would make the timing provisions of this Code section exceedingly difficult to apply and enforce. Without some kind of notice to the account holder about when the statement is or will become available,[1] the account holder will not know when its time to review the statement and notify the bank of any irregularities will expire.

In this case, the bank's policy of holding statements pursuant to the written request of a customer would probably qualify as making them available within the meaning of OCGA § 11-4-406, but the bank has produced, at best, only circumstantial evidence that such a request was made. All-Lift's president, on the other hand, submitted an affidavit providing direct evidence that he was the only person authorized to give instructions with regard to the account and that he never authorized the bank to hold the statements. "In ruling on a motion for summary judgment, a finding of fact that may be inferred from, but is not demanded by, circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists, provided that the circumstantial evidence may be construed consistently with the direct evidence." (Citations and punctuation omitted.) *Lane v. Spragg*, 224 Ga. App. 606, 607-608 (481 SE2d 592) (1997). In this case, the bank's circumstantial evidence can be construed consistently with All-Lift's direct evidence that it never authorized the bank to hold its statements. The bank may not have

---

[1] We decline to delineate a specific method of notice as there are a myriad of ways in which it could be provided and we should not unduly restrict the options available.

abided by its policy in this particular case, or it might have accepted a written request from an unauthorized person. As a result, the evidence fails to establish that the bank made its statements available to All-Lift pursuant to OCGA § 11-4-406.

Having reached this conclusion, we must now determine whether the trial court properly entered summary judgment in All-Lift's favor. If a bank sends account statements or makes them available to its customer, "the responsibilities and liabilities of the bank and customer are governed by OCGA § 11-4-406." *Eason Publications v. Nationsbank of Ga.*, 217 Ga. App. 726, 727-728 (1) (458 SE2d 899) (1995). If OCGA § 11-4-406 does not apply, a bank is "strictly liable for paying on a forged check." Id. at 727 (1). Because OCGA § 11-4-406 does not apply in this case, the trial court properly held the bank strictly liable for its payment of the forged checks that appeared on the statements that were not mailed to All-Lift.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 7, 2001.

*Glaze, Glaze, Harris & Arnold, Joe M. Harris, Jr.*, for appellant. *Alfred L. King, Jr.*, for appellee.