A08A1157. WHITE et al. v. SHAMROCK BUILDING
SYSTEMS, INC.
A08A1158. COOKE et al. v. SHAMROCK BUILDING
SYSTEMS, INC.
(669 SE2d 168)

MIKELL, Judge.

In this lawsuit, Shamrock Building Systems, Inc. ("Shamrock") alleges that its former employee, Mitchell Cooke, started a competing business, Cooke Enterprises, Inc. (collectively, the "Cooke Defendants"), while still employed by Shamrock, executed a profitable construction contract with White Property Acquisition/Management, LLC ("WPA") and conspired with WPA and its owner, Dewey C. White (collectively, the "White Defendants"), to breach Cooke's fiduciary duties to Shamrock. The White Defendants and the Cooke Defendants (collectively, the Defendants) each filed motions for summary judgment. The trial court denied the motions[1] and issued the Defendants certificates of immediate review. We granted the

---

[1] Shamrock also asserted a conversion claim against Cooke. The trial court granted summary judgment, and Shamrock has not appealed that ruling.

White Defendants' application for interlocutory appeal, and in Case No. A08A1157, we reverse, finding no genuine issue of fact on Shamrock's claims against them. The Cooke Defendants have cross-appealed the denial of their motion for summary judgment,[2] and in Case No. A08A1158, we affirm that judgment.[3]

The same standard of review applies to both cases.

> On appeal from the grant of summary judgment the appellate court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[4]

Viewed in the light most favorable to Shamrock, the nonmovant, the record contains evidence of the following facts. Shamrock is a small commercial construction firm, primarily engaged in the business of constructing mini-storage facilities. Shamrock hired Cooke in 1998 as an at-will employee to estimate the cost of Shamrock's prospective construction projects. In 2001, Cooke was responsible for soliciting business for Shamrock. In the first part of that year, Seamus Burke, who is responsible for Shamrock's daily operations, became dissatisfied with Cooke's performance. The men had a meeting on June 21, 2001, the outcome of which is disputed. According to Burke, Cooke offered to resign, but it was decided that Cooke would remain with Shamrock. Burke deposed that he and Cooke discussed a consulting arrangement, but Cooke's employment status never changed. Cooke, on the other hand, deposed that Burke agreed that Cooke would not remain as an employee but would be associated with Shamrock only as a consultant, to be paid on a per-project basis. Cooke thus believed he was free to seek potential projects for himself and to work for other contractors. To that end, Cooke started his own competing construction business and began soliciting bids.

In 2001, the White Defendants decided to construct a mini-storage facility on a portion of certain undeveloped property owned by WPA in Forsyth County (the "Paddocks Project"). In August

---

[2] Shamrock has questioned our jurisdiction of the cross-appeal. As the appeal on the main claim was taken pursuant to OCGA § 5-6-34 (b), the denial of the Cooke Defendants' motion for summary judgment "shall be reviewed and determined by" this Court pursuant to subsection (d) of that Code section.

[3] Additionally, the trial court denied the Defendants' motions to strike certain affidavits, a ruling which we address in Division 6, infra.

[4] (Citation and punctuation omitted.) *Insight Technology v. FreightCheck, LLC*, 280 Ga. App. 19, 20 (633 SE2d 373) (2006).

2001, Cooke submitted one of three bids to the White Defendants to construct the Paddocks Project. On August 29, 2001, the White Defendants entered into a preliminary letter of intent with Cooke's entity, which at the time was identified as "the Cooke Company," authorizing Cooke to proceed with civil and architectural design on the Paddocks Project. Ultimately, the White Defendants selected Cooke Enterprises to serve as WPA's general contractor on the Paddocks Project by executing a construction contract dated March 21, 2002. The contract price was $3,343,978, which included $750,000 for the value of the land. Cooke Enterprises agreed to reimburse WPA for the land costs.

At the time Cooke submitted his bid for the Paddocks Project, he represented to the White Defendants that he was free to undertake projects on his own behalf. Cooke averred that the White Defendants never took any affirmative steps to encourage him to form Cooke Enterprises or to alter his relationship with Shamrock. White stated that when Cooke submitted the bid, he did not disclose that he was associated with Shamrock. Shamrock did not submit a bid on the project and has never done business with the White Defendants.

Daniel B. Curtis, a consultant to Shamrock who recommended Shamrock as a general contractor on various self-storage projects, submitted an affidavit in response to the Defendants' motions for summary judgment. In that affidavit, Curtis stated that he met with White and performed an economic feasibility study for White on the Paddocks Project; that several months later, White asked Curtis for a recommendation for a general contractor, and he recommended Shamrock; that Curtis told White that Cooke was the "contact person" for Shamrock; that Curtis arranged and attended a meeting between Cooke and White, but Curtis did not recall that Shamrock's name was mentioned at that meeting; and that Curtis subsequently learned that Cooke had used the meeting to negotiate the contract for his own rival business.

Shamrock first became aware of the Paddocks Project on or about March 20, 2002, when it discovered documents concerning the project in Cooke's vehicle. Burke immediately fired Cooke. Shamrock, however, never advised White that Shamrock believed that it should have been given an opportunity to bid on the project. Shamrock waited almost a year and a half after filing suit against the Cooke Defendants to bring claims against the White Defendants.

In its second amended complaint, Shamrock asserted the following claims: breach of fiduciary obligations; breach of duties of loyalty, good faith and fair dealing; and breach of duty not to compete with an employer against Cooke (Count 1), and against Cooke Enterprises and the White Defendants (Count 2); and tortious interference with business relations against the White Defendants (Count 3).

## Case No. A08A1157

1. The White Defendants contend that the trial court erred in denying their motion for summary judgment on Count 2 of the complaint. Despite its nomenclature, Count 2 actually asserts that the White Defendants conspired with the Cooke Defendants to aid and abet the breach of Cooke's obligations to Shamrock, and to aid and abet Cooke by improperly competing with Shamrock by diverting the Paddocks Project business opportunity. Shamrock points to Curtis's affidavit as evidence that the White Defendants either knew, or should have known, that Cooke was associated with Shamrock at the time he submitted his bid for the Paddocks Project and that the White Defendants had a duty to investigate Cooke's relationship with Shamrock prior to doing business with him. The White Defendants contend that it is immaterial whether Cooke was still a full-time employee of Shamrock in August 2001, or, as he contends, a consultant, because Cooke independently decided to pursue his own competing business without the White Defendants taking any affirmative steps to encourage the competing business. We agree with the White Defendants.

"[W]e are mindful that there is no magic in mere nomenclature in the designation of causes of action."[5] Therefore, we address Count 2, in the first instance, as alleging a claim for aiding and abetting a breach of fiduciary duty, and secondarily, as a conspiracy claim. In Georgia, the tort of aiding and abetting a breach of fiduciary duty requires proof of the following elements:

> (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.[6]

"Improper actions constitute conduct wrongful in itself; thus, improper conduct means wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and

---

[5] (Citation and punctuation omitted.) Id. at 23 (1) (a).
[6] (Citations and footnotes omitted.) Id. at 25-26 (1) (a).

unwarranted criminal prosecutions."[7]

In the case at bar, Shamrock cannot survive summary judgment on the first two elements. There is no evidence that the White Defendants acted, through improper action or wrongful conduct, to procure an alleged breach of Cooke's fiduciary duty to Shamrock. There is only evidence that Curtis recommended Shamrock and informed White that Cooke was Shamrock's "contact person." Thereafter, in a meeting with Cooke and White to discuss the Paddocks Project, Curtis does not recall whether Shamrock's name was mentioned. On the other hand, White averred that Cooke did not disclose any relationship with Shamrock when he submitted the bid, and Cooke averred that he represented to the White Defendants that he was free to solicit contracts on his own behalf.

> In ruling on a motion for summary judgment, a finding of fact that may be inferred from, but is not demanded by, circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists, provided that the circumstantial evidence may be construed consistently with the direct evidence.[8]

Thus, even if it could be inferred from Curtis's affidavit that the White Defendants knew that Cooke was still employed by Shamrock at the time the contract was negotiated, such an inference has no probative value against the direct testimony of Cooke and White that Cooke did not disclose the relationship, but instead affirmatively represented that he was free to solicit business for himself. Similarly, Curtis's informing White that Cooke was Shamrock's "contact person" could be construed consistently with direct evidence that Cooke affirmatively represented to the White Defendants that he was free to conduct business for himself.

Further, there is no evidence that the White Defendants took any action "purposely and with malice with the intent to injure"[9] Shamrock's relationship with Cooke. "Malice" means any unauthorized interference or interference without legal justification or excuse.[10] Thus, persuading someone to break a contract for one's own

---

[7] (Citation and punctuation omitted.) *Disaster Svcs. v. ERC Partnership*, 228 Ga. App. 739, 741-742 (492 SE2d 526) (1997).

[8] (Citation and punctuation omitted.) *First Citizens Bank of Clayton County v. All-Lift of Ga.*, 251 Ga. App. 484, 486 (555 SE2d 1) (2001).

[9] (Footnote omitted.) *Continental Maritime Svcs. v. Maritime Bureau*, 275 Ga. App. 533, 535 (2) (621 SE2d 775) (2005).

[10] *Carroll Anesthesia Assoc. v. AnestheCare, Inc.*, 234 Ga. App. 646, 648 (1) (507 SE2d 829) (1998).

benefit at the expense of another may be malicious and actionable.[11] In this case, however, there is no evidence that the White Defendants took any action to persuade Cooke to break a contract with Shamrock. Rather, the evidence shows that it was Cooke who solicited the contract with the White Defendants. Thus, the evidence does not raise a genuine issue of material fact on Shamrock's claim for aiding and abetting a breach of fiduciary duty, as alleged in Count 2 of the complaint.

2. The White Defendants argue that insofar as Count 2 alleges a conspiracy claim, such claim fails as a matter of law. We agree. Because conspiracy to aid and abet a breach of fiduciary duty is merely a duplication of the claim of aiding and abetting a breach of fiduciary duty, the trial court should have granted summary judgment to the White Defendants on the conspiracy claim against them.[12] Therefore, the trial court erred in denying summary judgment to the White Defendants on Count 2 of the complaint.

3. The White Defendants also enumerate as error the denial of their motion for summary judgment on Count 3 of the complaint, alleging tortious interference with business relations. In Count 3, Shamrock alleges that the White Defendants wrongfully induced Cooke to breach his duties as an employee or agent of Shamrock. In order to prevail on its tortious interference claim, Shamrock must show that the White Defendants, without privilege, acted improperly, purposely, and with malice with the intent to injure; that they induced a breach of a contractual obligation; and that their tortious conduct damaged Shamrock.[13] This tort requires proof of virtually the same elements as the tort of aiding and abetting a breach of fiduciary duty, as described in Division 1. Therefore, Count 3 of the complaint is, in reality, indistinguishable from the aiding and abetting claim alleged in Count 2. It follows that the White Defendants are entitled to summary judgment on Count 3 as well.

## Case No. A08A1158

4. Cooke asserts that the trial court erred by failing to grant summary judgment in his favor on Shamrock's claims in Count 1 of the complaint: breach of fiduciary duty, breach of loyalty, good faith and fair dealing, and breach of the duty not to compete with an

---

[11] Id.

[12] See Insight Technology, supra at 26 (2), citing Griffin v. Fowler, 260 Ga. App. 443, 446 (1) (579 SE2d 848) (2003); Rome Indus. v. Jonsson, 202 Ga. App. 682, 684 (2) (415 SE2d 651) (1992).

[13] See Continental Maritime Svcs., supra at 535-536 (2); Dalton Diversified v. AmSouth Bank, 270 Ga. App. 203, 208-209 (4) (a) (605 SE2d 892) (2004); Tom's Amusement Co. v. Total Vending Svcs., 243 Ga. App. 294, 295 (2) (533 SE2d 413) (2000) (physical precedent only).

employer. Cooke argues that Count 1 asserts a claim for misappropriation of a corporate opportunity, for which he cannot be held liable because he was never an officer or director of Shamrock.[14] Cooke's interpretation of Count 1 is strained. In that count, Shamrock alleges that Cooke, as its agent, had a duty not to compete with Shamrock and a duty not to make a personal profit from business leads obtained through this relationship. Shamrock further alleges that Cooke's status as a full-time employee gave him a duty not to engage in a separate, competitive business. These are viable claims. "[T]he relation of principal and agent is a fiduciary one, and . . . the agent may not make a profit for himself out of the relationship, or out of the knowledge obtained from the relationship, to the injury of the principal. The relationship . . . demands of the agent the utmost loyalty and good faith to his principal."[15] Furthermore, although

> [a]n employee breaches no fiduciary duty to the employer simply by making plans to enter a competing business while he is still employed[,] . . . [h]e is not . . . entitled to solicit customers for a rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business.[16]

In this case, Shamrock has produced evidence sufficient to survive summary judgment on the issue of whether Cooke solicited the Paddocks Project contract for his own business entity, in direct competition with Shamrock, while he was still a full-time employee of Shamrock and responsible for bringing such contracts to Shamrock. Burke deposed that Cooke remained a full-time employee of Shamrock following their meeting in June 2001, and that although a discussion did take place concerning a change in that relationship, no agreement was ever reached to effectuate a change. Cooke admitted that he remained on Shamrock's payroll after the meeting and that his base salary of $75,000 per year did not change. Cooke contended that Burke agreed to keep him on the payroll as a favor because Cooke was building a home and had to show regular employment in order to close his permanent loan. Moreover, Cooke incorporated Cooke Enterprises in early fall of 2001, several months before

---

[14] See *Continental Maritime Svcs.*, supra at 534 (1) (only corporate officer or director may be held liable for breach of fiduciary duty due to misappropriation of a corporate opportunity).

[15] (Citations and punctuation omitted.) *Koch v. Cochran*, 251 Ga. 559, 560 (307 SE2d 918) (1983).

[16] (Citation omitted.) *Instrument Repair Svc. v. Gunby*, 238 Ga. App. 138, 140 (1) (518 SE2d 161) (1999); see also *E. D. Lacey Mills, Inc. v. Keith*, 183 Ga. App. 357, 363 (9) (359 SE2d 148) (1987). Accord *Physician Specialists in Anesthesia v. MacNeill*, 246 Ga. App. 398, 410 (9) (539 SE2d 216) (2000).

Shamrock terminated his employment on March 20, 2002. Cooke Enterprises and WPA immediately entered into the Paddocks Project contract on the following day. Cooke testified that upon its incorporation, Cooke Enterprises was involved in all facets of construction and development of commercial projects, and that prior to forming that company, he conducted business for himself as the Cooke Company. Curtis, the consultant, averred that after meeting with Cooke and White concerning the Paddocks Project, Curtis invoiced Shamrock for his fee, which he believed included his referral and recommendation of White to Shamrock as the general contractor for the project. Cooke never informed Curtis that Cooke was not acting as Shamrock's agent but instead had taken the lead for himself. This evidence raises disputed questions of fact for a jury concerning whether Cooke breached his fiduciary duties to Shamrock.[17] The trial court properly denied Cooke's motion for summary judgment on Count 1 of the complaint.

5. In Count 2 of the complaint, Shamrock asserted against Cooke Enterprises the same claims it asserted against Cooke; namely, breach of fiduciary duty, breach of loyalty, good faith and fair dealing, and breach of the duty not to compete with an employer. In response to the Cooke Defendants' motion for summary judgment, Shamrock argued that Cooke Enterprises conspired with Cooke to breach his duties as an employee of Shamrock. Shamrock contends that Cooke formed Cooke Enterprises while still employed by Shamrock for the purpose of creating a vehicle by which Cooke could solicit customers in breach of his fiduciary duties, thus showing a conspiracy between Cooke and Cooke Enterprises.

Cooke Enterprises argues that it cannot be liable for conspiring with Cooke because he is Cooke Enterprises's sole shareholder and a corporation cannot conspire with its agents. We do not agree. Cooke Enterprises relies on the federal intra-corporate conspiracy doctrine, which holds that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves," because a corporation and its employees are considered to be "a single legal actor."[18] This doctrine shields defendants in federal courts from civil liability for various

---

[17] Cooke relies upon *Looney v. M-Squared, Inc.*, 262 Ga. App. 499 (586 SE2d 44) (2003), to support his position that a breach of fiduciary duty claim must fail as a matter of law when that claim is wholly based on a separate claim for misappropriation of a corporate opportunity that failed as well. Id. at 503 (2). *Looney* is inapposite for two reasons. First, as noted above, Count 1 is not based on a misappropriation claim. Second, in *Looney*, this Court applied North Carolina law to resolve the claims. Id. at 501 (1) (misappropriation of a corporate opportunity), 503 (2) (breach of fiduciary duty).

[18] (Citation omitted.) *McAndrew v. Lockheed Martin Corp.*, 206 F3d 1031, 1036 (II) (11th Cir. 2000).

federal civil conspiracy claims, such as antitrust, but not for criminal conspiracies.[19] Cooke Enterprises has not cited a single Georgia appellate case in which this doctrine has been applied, and our research reveals none. We decline this defendant's invitation to apply the doctrine in this case. Instead, we rely upon well-settled law in Georgia:

> The courts of this state have said many times that a corporation and its owner, even a sole owner, are separate and distinct. . . . A corporation is an artificial person created by law. The corporate identity is entirely separate from the identity of its officers and stockholders. A corporation and even its sole owner are two separate and distinct persons.[20]

Thus, because a corporation and its sole shareholder are two distinct persons, they may be held liable for conspiring with each other.[21]

In this case, Shamrock has produced evidence sufficient for a jury to decide whether Cooke Enterprises is liable for conspiring with Cooke to commit, or aid and abet, a breach of Cooke's fiduciary duty to Shamrock. As stated in *Insight Technology*,[22] this tort is derived from OCGA § 51-12-30, which provides: "In all cases, a person who maliciously procures an injury to be done to another, whether an actionable wrong or a breach of contract, is a joint wrongdoer and may be subject to an action either alone or jointly with the person who actually committed the injury." Thus, "one who procures or assists in the commission of an actionable wrong is equally liable with the actual perpetrator for the damages."[23] The evidence recounted in Division 4 raises questions of fact as to whether Cooke Enterprises was created as a vehicle to compete with Shamrock; whether, through improper action or wrongful conduct, Cooke Enterprises assisted in Cooke's alleged tortious conduct, knowing that Cooke owed Shamrock a fiduciary duty; whether it acted with the

---

[19] Id. at 1035-1036 (II).

[20] (Citations and punctuation omitted.) *Shelby Ins. Co. v. Ford*, 265 Ga. 232, 233 (454 SE2d 464) (1995). See also OCGA § 1-3-3 (14) (the term " '[p]erson' includes a corporation").

[21] See *Williams Gen. Corp. v. Stone*, 280 Ga. 631 (632 SE2d 376) (2006) (holding that a corporation is a "person" under the Georgia civil Racketeer Influenced and Corrupt Organizations Act and can be held directly liable for conspiring with its officers).

[22] Supra at 25 (1) (a).

[23] *City of Hawkinsville v. Wilson & Wilson, Inc.*, 231 Ga. 110, 111 (3) (200 SE2d 262) (1973). See also *Insight Technology*, supra at 25 (1) (a), n. 12:
> The word "procure[,]" as used in OCGA § 51-12-30, does not require the lending of assistance in the actual perpetration of the wrong done by another; but if one, acting only through advice, counsel, persuasion, or command, succeeds in procuring any person to commit an actionable wrong, the procurer becomes liable for the injury, either singly or jointly, with the actual perpetrator.

(Citation and punctuation omitted.)

requisite intent; whether, in fact, it procured a breach of Cooke's fiduciary duty; and whether its conduct damaged Shamrock.[24]

6. Finally, the Cooke Defendants argue that the trial court erred in refusing to strike the portions of the affidavits of Shamrock's representatives that contradicted their deposition testimony on the issue of whether they would have undertaken the Paddocks Project on the same terms and conditions as the Cooke Defendants.[25] We disagree.

The rule on summary judgment is that "the testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is contradictory, vague or equivocal."[26] The trial court must eliminate the favorable portions of the contradictory, vague, or equivocal testimony unless a reasonable explanation is offered; if the testimony is reasonably explained, then the issue is merely one of credibility of the witness.[27] Whether the party has offered a reasonable explanation presents an issue of law for the trial judge, whose decision will be upheld unless it is clearly erroneous.[28]

The evidence on this issue shows that Seamus Burke, Gregory L. Barnes, Shamrock's controller, and Bernadette Burke, who is Burke's wife and Shamrock's president, all deposed that Shamrock would not have agreed to undertake the Paddocks Project under the terms offered by the White Defendants and accepted by Cooke because it appeared that the inclusion of the land costs in the construction loan was improper. Specifically, in his first deposition in 2004, Seamus Burke stated that "if you mean that it was going to be $750,000 returned to Dewey White with the bank not being aware of it, no we would not." Barnes deposed that he did not know whether White diverted that money from the construction loan because he had not yet seen the supporting documents, and could only rely on Cooke's testimony that the money was part of the construction draws. After the Defendants submitted their respective motions for summary judgment in 2007, Burke and Barnes filed affidavits in which they stated that they would have agreed to the project under substantially the same terms offered by Cooke. Seamus Burke explained that, at the time of his depositions, he did not know either

[24] See *Insight Technology*, supra at 25 (1) (a).

[25] The White Defendants enumerated this ruling as error as well, but it is moot with regard to them in light of our holding in Division 1.

[26] (Citation and punctuation omitted.) *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (1) (343 SE2d 680) (1986).

[27] See *Mitchell Family Dev. Co. v. Universal Textile Technologies*, 268 Ga. App. 869, 872 (3) (602 SE2d 878) (2004).

[28] See *Bass Custom Landscapes v. Cunard*, 258 Ga. App. 617, 621 (2) (575 SE2d 17) (2002) (whole court).

the terms of the contract at issue or the terms of the agreement between White and the bank, so he did not have sufficient information to know how the land money was handled. Burke subsequently learned that Cooke stated that the entire transaction was proper, and explained that under those circumstances, if Cooke had brought the lead to Shamrock, Shamrock would have negotiated the deal on substantially the same terms and conditions ultimately accepted by White. Barnes and Bernadette Burke provided similar explanations.

The Cooke Defendants contend that the explanation is unreasonable, so that when Shamrock's favorable testimony is discarded, the evidence demands a finding that the Paddocks Project was not a business opportunity of which Shamrock would have availed itself; therefore, Shamrock cannot show that it was damaged by any alleged tortious activity of the Cooke Defendants.[29]

Pretermitting whether the testimony of Shamrock's representatives is contradictory, vague, or equivocal, we conclude that, based on the totality of such testimony, any conflict therein is a matter of credibility for the jury to resolve.[30] Although the Cooke Defendants argue that these deponents should have known all the relevant facts by the time of their depositions that postdated 2004 and have simply manufactured an explanation in order to survive summary judgment, such argument addresses itself to the credibility of the witnesses and not the reasonableness of their explanations. It is plausible that Shamrock would not have done the deal if their principals believed that a certain condition might be improper, and when they learned that White's terms were proper, then they would have accepted the contract. The trial court did not clearly err in denying the motion to strike.[31]

*Judgment reversed in Case No. A08A1157. Judgment affirmed in Case No. A08A1158. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 9, 2008 —
RECONSIDERATION DENIED NOVEMBER 4, 2008.

*Schreeder, Wheeler & Flint, Scott D. McAlpine, John A. Christy,* for appellants (case no. A08A1157).
*Withrow, McQuade & Olsen, Terrence McQuade, Erin E. Terrell,* for appellants (case no. A08A1158).

---

[29] They expound upon this theory in a reply brief. Shamrock's motion to strike the relevant portion of the Cooke Defendants' reply brief is denied.

[30] See *Mitchell Family Dev. Co.*, supra at 873 (3).

[31] See id.; *Bass Custom Landscapes*, supra.

*Rachelson & White, Ira L. Rachelson*, for appellee.