[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-15783
Non-Argument Calendar
_____

D.C. Docket No. 07-00162-CV-CDL-4

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 24, 2009
THOMAS K. KAHN
CLERK

G&G TIC, LLC,

Plaintiff-Appellant,

versus

ALABAMA CONTROLS, INC.,
SHAW INFRASTRUCTURE, INC.,
TAC AMERICAS, INC.,
ROGER E. REUSE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(April 24, 2009)

Before BIRCH, HULL, and COX, Circuit Judges.

PER CURIAM:

G&G TIC, LLC sued Alabama Controls, Inc., Shaw Infrastructure, Inc., TAC Americas, Inc., and Roger E. Reuse, alleging that they had caused G&G to lose contracts it had, and not be awarded contracts it bid on.[1] G&G's Amended Complaint alleged eleven counts of relief. G&G brought federal RICO claims for wire fraud, mail fraud, bank fraud, injunctive relief, violations of the Hobbs Act, and conspiracy against Alabama Controls, Shaw, and TAC.[2] G&G brought Georgia RICO claims against Alabama Controls, Shaw, and TAC. G&G brought breach of contract and tortious interference with contract claims against TAC, and tortious interference claims against Shaw, Alabama Controls, and Reuse.

The defendants collectively moved to dismiss all of G&G's claims for failure to state a claim. G&G moved for leave to amend its Amended Complaint. The district court granted the motion to dismiss, and denied G&G leave to amend. G&G appeals that order.

First, G&G argues that the district court erred in dismissing its RICO claims. The district court dismissed the claims because they failed to properly allege proximate causation as required by *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451,

---

[1] The district court's order, (R.3-61 at 2-6), does an excellent job summarizing the factual background to this case.

[2] The RICO claim based on bank fraud was previously dismissed and is not before us in this appeal.

2

126 S. Ct. 1991 (2006). (R.3-61 at 15.) In *Anza*, the Supreme Court held that one company's fraud on the government does not proximately cause the injury a competitor sustains by being at a competitive disadvantage due to the fraud. 547 U.S. 459-60, 126 S. Ct. at 1997-98 ("The element of proximate causation . . . . has particular resonance when applied to claims brought by economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust laws."). G&G argues that even when the defendants defraud the government, a business competitor may be directly injured such that its injury is proximately caused by the fraud committed against the government. Neither of the two cases G&G relies on for this proposition, however, persuade us that *Anza* does not control here.[3] Accordingly, we agree with the district court that G&G has failed to allege proximate cause, and thus has failed to properly allege a federal RICO claim based on wire or mail fraud.

---

[3]G&G relies on *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277 (11th Cir. 2006) and *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 518 F. Supp.2d 1182 (C.D. Cal. 2007). In *Williams*, this court held that when a defendant engages in illegal activity with the purpose, and direct result, of reducing the hourly wages it pays, those employees whose hourly wages were reduced have an injury proximately caused by the illegal activity. 465 F.3d at 1292. *Williams* is distinguishable because there was no other party more directly injured by the illegal activity than the employees whose wages were reduced. In *Bulletin Displays*, a California district court held that, when a government accepts bribes from a company and awards that company contracts, the company's competitors' injuries are proximately caused by the illegal activity. 518 F. Supp.2d at 1189. *Bulletin Displays* is distinguishable because here, Shaw, TAC, and Alabama Controls are all private companies that allegedly conspired to defraud the government. The government was not complicit in the scheme.

Second, the district court's dismissal of G&G's federal RICO claim based on a violation of the Hobbs Act was appropriate. The district reasoned that the allegations supporting this count were implausible, and on appeal G&G does not argue that they were plausible.[4] Because G&G makes no argument that the district court's conclusion of implausibility was erroneous, we do not disturb the district court's dismissal of this count on that ground.

Third, because the federal RICO claims based on wire fraud, mail fraud, and Hobbs Act violations were properly dismissed, the federal RICO conspiracy claim, bottomed on liability on either the wire fraud, mail fraud, or Hobbs Act violation, was also properly dismissed. Federal case law is persuasive authority for Georgia RICO claims. *Williams Gen. Corp. v. Stone*, 614 S.E.2d 758, 760 (Ga. 2005). Accordingly, the Georgia RICO claims were properly dismissed for the same reasons the federal RICO claims were properly dismissed.

Fourth, the district court's dismissal of the breach of contract claim against TAC was appropriate. G&G contends that the district court erred in considering the contents of the contract, and not merely the allegations in the Amended Complaint, in its analysis of TAC's motion to dismiss. We disagree. The district court's

[4]G&G's only argument with respect to the count alleging a RICO claim based on a Hobbs Act violation is that proximate cause was properly alleged. (Appellant's Br. at 29 n.6.) G&G does not address whether or not its allegations were plausible.

consideration of the contract referenced in G&G's Amended Complaint was proper. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (court can consider document referenced in complaint when deciding a motion to dismiss). The district court properly concluded that the contract was not a requirements contract,[5] and that although G&G was assigned a territory, that territory was non-exclusive. Accordingly, G&G's allegations that TAC breached the contract by selling equipment to G&G's competitor within G&G's territory and by threatening not to sell G&G equipment are implausible. Dismissal of the breach of contract claim was appropriate.

Finally, the district court properly dismissed G&G's tortious interference claims. G&G argues in its brief that it seeks to proceed on only one of the tortious interference claims in its proposed Second Amended Complaint (Count 8). (Appellant's Br. at 40.) G&G does not argue that the district court erred in dismissing the tortious interference claims in the Amended Complaint. Rather, G&G's argument is that it could have stated a cognizable claim against TAC and Shaw for tortious interference if it had been granted leave to amend. This is

---

[5]G&G argues that, under Georgia law, a requirements contract can be implicit. (Appellant's Br. at 37.) The contract clearly states, however, that Texas law governs its interpretation. (R.1-22, Ex. 1 at 6.) The 5th Circuit has interpreted Texas law to require, absent an explicit contract provision that the buyer will purchase exclusively from the seller, at least a quantity term specifying that the contract is for the sale of a "party's requirements." *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 963 (5th Cir. 1999) (quotation marks and citation omitted).

duplicative of G&G's argument that the district court erred in denying it leave to amend.

The district court denied G&G leave to amend its Amended Complaint on the ground that the amendment was futile. We agree with the district court. The proposed Second Amended Complaint does not cure the deficiencies present in the federal RICO counts, the state RICO counts, nor the breach of contract count.

G&G argues that Count 8 of the proposed Second Amended Complaint states a cognizable claim for tortious interference against TAC and Shaw for interfering with G&G's contractual relationship with Caddell, and thus would not be a futile amendment. We disagree.

G&G's proposed Second Amended Complaint does not state a claim of tortious interference against TAC because TAC is privileged to interfere in G&G's contract with Caddell under Georgia law. Under Georgia law, a tortious interference claim will not lie against a privileged defendant (one who has a legitimate economic interest in the contract). *Disaster Servs., Inc. v. ERC P'ship,* 492 S.E.2d 526, 528-29 (Ga. Ct. App. 1997); *see Renden, Inc. v. Liberty Real Estate Ltd. P'ship III*, 444 S.E.2d 814, 818 (Ga. Ct. App. 1994) (lessor privileged to interfere in sublease). Here, the tortious interference claim involves a contract awarded by the Army Corps of Engineers to Caddell. Caddell then subcontracted with G&G to perform the work on the direct

6

digital controls. TAC supplied the equipment that G&G was using to fulfill its contract with Caddell, and so had a legitimate economic interest in the contract. TAC is therefore a privileged defendant, and an action for tortious interference will not lie against it.

Furthermore, G&G's proposed Second Amended Complaint does not state a claim against Shaw. Under Georgia law, the expression of an opinion to dissuade someone from continuing in a business relationship, without more, does not give rise to an actionable claim for tortious interference. *Edler v. Cardoso*, 421 S.E.2d 753, 757 (Ga. Ct. App. 1992). Here, G&G's only allegation with respect to Shaw is that Shaw "suggested that Caddell replace G&G with Alabama Controls." (R.2-47, Ex. 1 at 52.) G&G must do more than allege that Shaw stated its opinion as to whom it thought Caddell should use as a subcontractor in order to state a tortious interference claim upon which relief can be granted.

Accordingly, the proposed Second Amended Complaint does not state a claim for tortious interference.

The proposed Second Amended Complaint does not cure any of the pleading deficiencies that made dismissal of the Amended Complaint proper. Accordingly, the district court did not err in denying G&G's motion for leave to amend.

7

Because dismissal of the Amended Complaint was proper, and because the motion for leave to amend was properly denied as futile, we affirm the district court's well-reasoned opinion.

AFFIRMED.