## A99A0388. INSTRUMENT REPAIR SERVICE, INC. v. GUNBY et al.

### (518 SE2d 161)

McMurray, Presiding Judge.

Plaintiff Instrument Repair Service, Inc. ("IRSI") brought this action against two former employees, defendants William Todd Gunby and Jesus Ralph Cruz, as well as their newly formed corporation, defendant Quantex Industries, Inc. ("Quantex"), alleging a conspiracy to breach defendants' duty of loyalty and good faith owed to plaintiff. The complaint prayed for an injunction restraining defendants from "misappropriating [plaintiff's] business opportunities . . .," damages for wrongful conduct and "unjust enrichment . . . by reason of [defendants'] receipt of income and profits . . ." properly belonging to IRSI, punitive damages, and the expenses of litigation for unnecessary trouble and expense, and defendants' stubborn litigiousness. Defendants' joint answer admitted that defendants "Gunby and Cruz were employees of [IRSI]," but denied all the material allegations. After discovery, defendants moved for summary judgment, arguing that their preparation for starting a competing business was not itself a breach of any fiduciary duty, and the evidence shows no tortious interference with plaintiff's existing contractual relations. Viewed in the light most favorable to plaintiff as the non-movant, the essentially undisputed evidence reveals the following material chronology:

IRSI was founded by James Smith in 1975, in business to repair and calibrate electronic test equipment and to provide on-site testing and equipment calibration services. IRSI began testing and servicing equipment for BellSouth Telecommunications, Inc. ("BellSouth") in 1984 and had a current nonexclusive contract to provide on-site services through April 1999. The BellSouth contract described IRSI as an independent contractor and provided:

> Nonexclusive Rights. It is expressly understood . . . that this Agreement does not grant Seller [IRSI] an exclusive privilege to sell to Buyer [BellSouth] any or all material, Services and/or software that Buyer may require. Buyer reserves the right to contract with other . . . suppliers for the procurement of comparable . . . services.

A similar provision is in the service contract IRSI has with Bell Atlantic through June 2000. Despite this nonexclusive relationship, there were in fact no other approved vendors of on-site calibration services for BellSouth central offices at the time Gunby and Cruz left IRSI. For fiscal year 1996, the approximate gross revenues IRSI received from its on-site calibration contract with BellSouth was

$346,000, whereas for fiscal year 1997, revenue dropped to $219,500.

Defendant Gunby was hired by IRSI in 1988 as a technician, at which time, he signed a non-disclosure agreement not to reveal technical information acquired during his employment with IRSI. Over time, Gunby's responsibilities increased and in December 1995, the IRSI Board of Directors elected Gunby to the position of Vice President of Southeast Operations and On-Site Calibrations. Defendant Cruz was hired by IRSI in 1995 as the director of planning, at a starting salary of $50,000. Cruz considered himself part of IRSI's management. His principal responsibility was to market the company for sale and to try and locate interested buyers. Additionally, Cruz was to develop a business plan for the future growth of IRSI.

In May 1996, IRSI president, James Smith, was diagnosed with terminal liver cancer. By early October 1996, defendants Gunby and Cruz discussed going into business for themselves, and on November 20, 1996, defendant Quantex was incorporated. On December 5, 1996, James Smith died. During December, defendants arranged to lease an office for Quantex, beginning in January 1997. Defendant Cruz resigned from IRSI on December 30, 1996. Defendant Gunby continued to work at IRSI while taking steps to obtain a tax identification number and business license for Quantex. On January 16, 1997, Gunby signed a new employment agreement with IRSI but because "[r]epairs as a total [had] declined," Britt Myers, the new president of IRSI, concluded that "Gunby had slowed his work for IRSI considerably . . ." and so Gunby was fired from IRSI on January 23, 1997. At no time did either defendant inform Britt Myers of their plans to start a competing business. Defendants actively solicited business for Quantex from Bell Atlantic and BellSouth in February 1997 but did not contact BellSouth or Bell Atlantic on behalf of Quantex before each had resigned from IRSI.

BellSouth subsequently "contracted GTE Electronic Repair Services (GTE-ERS) [("GTE")] as the primary supplier of central office and outside plant (OSP) test set calibration services." GTE selected Quantex for on-site work for BellSouth in Louisiana and Alabama. Three former IRSI employees subsequently joined Quantex, although they had never performed data equipment repairs for IRSI. Quantex does not perform test equipment services directly for BellSouth or Bell Atlantic; rather, these services are performed on behalf of these Bell entities through GTE. Regarding allegedly misappropriated corporate opportunities, the undisputed evidence is that James Smith did not want to form any alliance with GTE because he considered GTE to be a competitor. Regarding data equipment services, defendant Gunby informed James Smith of the possibility that IRSI could obtain new business servicing data equipment for Ed Hill and his corporation, STMC, but that James Smith declined to pursue this

opportunity. Defendants decided this was a good opportunity and if James Smith would not take advantage of it, they would.

The trial court granted defendants' motion, and plaintiff appeals. *Held*:

1. We consider first the grant of summary judgment in favor of defendant Cruz.

> An employee breaches no fiduciary duty to the employer simply by making plans to enter a competing business while he is still employed. Even before the termination of his agency, he is entitled to make arrangements to compete and upon termination of employment immediately compete. He is not, however, entitled to solicit customers for a rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business.

(Citations and punctuation omitted.) *Nilan's Alley v. Ginsburg*, 208 Ga. App. 145 (1) (430 SE2d 368).

> The principles of agency, while pertinent to the time period when [Cruz] was still in [IRSI's] employ, will not sustain the grant of an injunction prohibiting competition after the agency relationship is terminated. If the rule were otherwise, no former agent could compete against a former principal.

*Pope v. Kem Mfg. Corp.*, 249 Ga. 868, 869 (1) (295 SE2d 290). Defendant Cruz was given a title but was not a director or an elected corporate officer of IRSI. Nevertheless, as IRSI's agent to solicit and receive offers to purchase IRSI, we assume, for purposes of this appeal, that Cruz owed IRSI fiduciary obligations during the existence of the agency. *Nilan's Alley v. Ginsburg*, 208 Ga. App. 145 (1), supra. It is undisputed he did not personally solicit IRSI customers for Quantex during the existence of his agency with IRSI, and it is further undisputed that no one at Quantex began soliciting BellSouth or Bell Atlantic until *after* both defendants Cruz and Gunby had ended their relationship with IRSI. Consequently, either as an individual employee (and not an officer or director), or as an alleged co-conspirator, defendant Cruz did not breach his fiduciary duty to IRSI during the existence of his agency. The trial court correctly granted summary judgment to defendant Cruz.

2. Defendant Gunby was, until his termination on January 23, 1997, an elected officer of IRSI. There is no contention that he breached any enforceable covenant not to compete. We assume that Gunby owed IRSI a duty of loyalty and good faith during his employ-

ment and further assume that IRSI had a protected business opportunity in its ongoing contractual relationships with BellSouth and Bell Atlantic. See *Southeast Consultants v. McCrary Engineering Corp.*, 246 Ga. 503 (273 SE2d 112).

"Once it has been established that a corporate opportunity has been presented to an officer, he must prove that he did not violate his fiduciary duties of loyalty, good faith, and fair dealing toward the corporation." *Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584, 587 (2) (397 SE2d 699).

The undisputed evidence is that James Smith was informed by Gunby of the new procedures for obtaining additional work for Bell-South and Bell Atlantic through GTE, but James Smith expressly declined that opportunity, and he also eschewed the possibility of working for STMC. IRSI generated more than $200,000 in fiscal 1997 from services performed for BellSouth under the ongoing contractual relationship. The new corporation Quantex had to be selected by GTE before it could perform any services in direct competition with IRSI, and this did not happen until after each defendant terminated his relationship with IRSI. Consequently, the evidence is undisputed that defendants Gunby and Cruz did not unlawfully profit at the expense of IRSI during any agency relationship. *Nilan's Alley v. Ginsburg*, 208 Ga. App. 145 (1), supra. The circumstance that, after defendants left IRSI, GTE awarded Quantex some work that might previously have been awarded to IRSI is not sufficient to sustain a finding that defendants previously breached the duties of good faith and loyalty they had owed to IRSI before they left. The trial court correctly granted summary judgment in favor of defendant Gunby as to IRSI's claim for breach of fiduciary duty. Id. at 146 (1).

3. Conspiracy itself furnishes no cause of action; rather, the gist of the action is the tort committed thereby and the resulting damage. *Cook v. Robinson*, 216 Ga. 328 (1), 329 (116 SE2d 742); *Safety-Kleen Corp. v. Smith*, 203 Ga. App. 514 (3) (417 SE2d 171). The evidence fails to show any unlawful means were used in setting up the defendants' lawfully competing business. Accordingly, there is no jury question here as to defendants' non-liability for the alleged conspiracy.

4. The absence of liability for compensatory damages precludes an award of OCGA § 13-6-11 attorney fees or other expenses of litigation. The trial court correctly granted summary judgment as to that claim. *Russell Corp. v. BancBoston Financial Co.*, 209 Ga. App. 660, 663 (6) (434 SE2d 716).

*Judgment affirmed. Andrews and Ruffin, JJ., concur.*

DECIDED MAY 18, 1999.

*Smith, Gambrell & Russell, Thomas W. Rhodes, Melanie S. Stone,* for appellant.
*Lokey & Smith, Malcolm Smith, Kevin A. Doyle,* for appellees.