**TRACFONE WIRELESS, INC.,**
a Delaware Corporation,
Plaintiff,

v.

**ZIP WIRELESS PRODUCTS, INC., a Georgia Corporation; Timothy H. Yeager, individually; and William R. Yeager, individually, Defendants.**

Civil Action No. 1:09–cv–2575–TCB.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 7, 2010.

Aaron S. Weiss, Carlton Fields, P.A., Miami, FL, Gail Podolsky, Carlton Fields, P.A., Atlanta, GA, James B. Baldinger, Carlton Fields, P.A., West Palm Beach, FL, for Plaintiff.

Cheralynn M. Gregoire, Lisa Fivars Harper, Otto F. Feil, III, Chorey Taylor & Feil, Atlanta, GA, David J. Zack, Kendall Coffey, Coffey Burlington Office in the Grove, Miami, FL, for Defendants.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This matter is before the Court on Defendants' motion to dismiss [15] and motion to strike complaint [16].

## I. Background [1]

Plaintiff TracFone Wireless, Inc. is the largest provider of prepaid wireless telephone service in the United States and markets its services under the TracFone, NET10, SafeLink and Straight Talk brands. TracFone owns and uses several trademarks including the aforementioned brands. TracFone's service enables customers to prepay for wireless telephone service by purchasing TracFone airtime cards and specially manufactured wireless telephones also sold under the TracFone, NET10, SafeLink and Straight Talk brands ("TracFone prepaid phones"). Customers load airtime onto their TracFone prepaid phones using codes generated from personal identification numbers found on the airtime cards or via TracFone's website. TracFone prepaid phones and airtime cards are sold through major national retailers such as Wal–Mart, Target and Sam's Club. TracFone contracts with facilities-based wireless providers such as AT & T, Verizon, T–Mobile and Sprint/Nextel to purchase airtime on their networks for use by TracFone's customers.

TracFone sells its prepaid phones at a price significantly below cost. TracFone recoups these costs through profits derived from the sale of the prepaid airtime cards required to make and receive calls on the phones. Manufacturers of TracFone prepaid phones install proprietary prepaid telephone software that is developed, copyrighted and owned by TracFone. The software prevents TracFone prepaid phones from being used without loading airtime minutes from a TracFone prepaid airtime card. TracFone's prepaid phones' packaging contains a number of terms and conditions intended to restrict the use of the prepaid phones to TracFone's prepaid wireless service network. Importantly, the terms and conditions prohibit the purchaser from tampering with the handset and from using the handset outside of TracFone's wireless service and coverage area.

Defendant Zip Wireless Products, Inc. is an Illinois corporation whose principal place of business is in Georgia. Defendant Timothy H. Yeager is its chief executive officer and secretary, and Defendant William R. Yeager is its chief financial officer.

TracFone alleges that Defendants are engaged in an enterprise that TracFone describes as a "bulk resale scheme." As a part of this scheme, TracFone alleges that

---

**1.** Because the matter is before the Court on a motion to dismiss, the Court takes the factual allegations of the complaint as true. *Hun-* *nings v. Texaco, Inc.,* 29 F.3d 1480, 1484 (11th Cir.1994).

Defendants and/or other unnamed co-conspirators are purchasing and selling TracFone prepaid phones in bulk quantities for use outside of the TracFone prepaid wireless service and coverage area. The complaint alleges that the phones are removed from their original packaging, shipped overseas and "unlocked" or "reflashed." The process of unlocking or reflashing the phones circumvents electronic protections installed on the handset and then erases, removes and/or disables TracFone's proprietary software. Once the phone has been unlocked or reflashed, it is no longer operable on the TracFone wireless service, thereby precluding TracFone from generating revenue from the purchase of airtime on its network and preventing TracFone from recouping the invested subsidy on the phones.

On September 18, 2009, TracFone filed this action, asserting claims for federal trademark infringement (count one), federal unfair competition (count two), breach of contract (count three), contributory trademark infringement (count four), copyright infringement (count five), circumvention of copyrighted software protection system (count six), trafficking in circumvention technology (count seven), tortious interference with contractual rights and business relations (count eight), conspiracy to induce breach of contract (count nine), civil conspiracy in violation of Georgia common law (count ten), common law unfair competition (count eleven), unfair competition under Georgia law (count twelve), unjust enrichment (count thirteen), and deceptive trade practices (count fourteen).

On November 2, 2009, Defendants filed a motion to dismiss [15] pursuant to Fed.

R.Civ.P. 12(b)(6), asserting that for all fourteen counts in the complaint, TracFone has failed to state a claim upon which relief can be granted.[2] Defendants also filed a motion to strike [16] paragraphs 72 through 74 of the complaint and Exhibit D to the complaint relating to consent judgments that TracFone and other prepaid wireless providers have obtained against other parties engaged in activity substantially similar to Defendants' alleged activities.

## II. Discussion

### A. Motion to Dismiss

#### 1. Legal Standard

A pleading must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The allegations in TracFone's complaint are presumed true at this stage, and all reasonable factual must be construed in its favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir.1994). However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *accord Lewis v. Brautigam*, 227 F.2d 124, 127 (5th Cir.1955).[3] To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to

---

**2.** Defendants also filed a motion for leave excess pages [17] for their motion to dismiss. The Court will grant the motion and has fully considered all arguments set forth in Defendants' motion to dismiss.

**3.** The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

### 2. Analysis

As an initial matter, the Court notes that Defendants spend a significant portion of their motion to dismiss asserting that TracFone's complaint is "[a]lmost completely devoid of factual allegations" and is "rife with legal conclusions and bald assertions." The Court disagrees.

FED.R.CIV.P. 8(a) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal punctuation and quotations omitted). Although the Court in *Twombly* rejected *Conley's* liberal "no set of facts" standard, the Court did not adopt; a standard requiring a heightened level of factual pleading. The Court specifically held that "we do not require heightened facts pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. Thus, the Court held that plaintiffs must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" demonstrating the necessary elements of their claims. *Id.* at 556, 127 S.Ct. 1955. Only when plaintiffs "have not nudged their claims across the line from conceivable to plausible" must a complaint be dismissed. *Id.* at 570, 127 S.Ct. 1955.

In further clarifying the *Twombly* standard, the Court has adopted a two-pronged approach to evaluating motions to dismiss: (1) eliminate any allegations in the complaint that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ash-*

*croft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1940–41, 173 L.Ed.2d 868 (2009).

While TracFone's complaint does not contain specific factual allegations detailing every purchase and sale of its prepaid phones by Defendants, the complaint does contain factual allegations that indicate that Defendants and/or unnamed co-conspirators engaged in an enterprise through which TracFone's prepaid phones were purchased in bulk, unlocked and/or reflashed, thereby disabling TracFone's propriety software, and then sold for use outside of TracFone's wireless service and coverage area. When read in their totality, TracFone's factual allegations, which the Court must at this stage accept as true, plausibly give rise to an entitlement for relief.

Defendants assert that TracFone's repeated use of the phrase "and/or" renders the complaint insufficiently definite under *Twombly* and Georgia law. As an initial matter, Defendants' reliance upon Georgia law, and more specifically *Saylor v. Williams*, 93 Ga.App. 643, 645, 92 S.E.2d 565, 567 (1956), is misplaced.

In *Saylor*, the Georgia Court of Appeals held that Georgia law is clear that when the term "and/or" is used in a pleading, it does not mean both. Thus, unless a party defines "and/or" in the complaint as meaning either "and" or "or," the expression is too indefinite to constitute a positive allegation that the persons, object or events to which the expression is applied are referred to alternatively or collectively. *Id.*

However, the Eleventh Circuit has held that a federal court need not adhere to a state's pleading requirements, but should instead follow the requirements of FED. R.CIV.P. 8(a). *See Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir.1986); *see also Adventure Outdoors, Inc. v. Bloomberg*, 519 F.Supp.2d 1258, 1278 (N.D.Ga. 2007), *rev'd on other grounds*, 552 F.3d

1290 (11th Cir.2008); *Hustlers, Inc. v. Thomasson*, 253 F.Supp.2d 1285, 1294 (N.D.Ga.2002). Thus, the Georgia Court of Appeals' holding in *Saylor* is not binding on this Court. Further, Defendants have not provided, and the Court has not found, any federal authority that agrees with Georgia law's interpretation of the use of the phrase "and/or."

Additionally, the Court finds that TracFone's use of "and/or" satisfies the requirements of *Twombly*. In making this inquiry, the Court first turns to the American Heritage Dictionary, which defines "and/or" as "used to indicate that either or both of the terms connected by it are involved." The American Heritage Dictionary 67 (4th ed.2006). Thus, TracFone's allegations assert that either Defendants, their co-conspirators, or both Defendants and their co-conspirators engaged in the actions that gave rise to TracFone's causes of action.

The only situation in which these allegations could fail to support a claim against Defendants is if the actions alleged are exclusively those of the unnamed co-conspirators. However, so long as TracFone has sufficiently alleged that a conspiracy existed, the acts of the co-conspirators may be attributed to Defendants such that the acts can be used to state a claim against Defendants. *See Cook v. Robinson*, 216 Ga. 328, 330, 116 S.E.2d 742, 745 (1960) ("Where civil liability for a conspiracy is sought to be imposed, the conspiracy itself furnishes no cause of action.... [B]ut where a cause of action [for tortious conduct] is alleged, the fact of conspiracy, if proved, makes any actionable deed by one of the conspirators chargeable to all."). Thus, the inquiry becomes whether TracFone has sufficiently stated that a conspiracy exists.

A conspiracy is "a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga.App. 552, 560, 644 S.E.2d 440, 448 (2007) (quoting *Mustaqeem–Graydon v. SunTrust Bank*, 258 Ga.App. 200, 207, 573 S.E.2d 455, 461 (2002)). TracFone has successfully alleged each of these elements. In paragraph 62 of its complaint, TracFone alleges that Defendants and their co-conspirators reached an agreement to unlawfully purchase in bulk, traffic and resell unlawfully reflashed and counterfeit TracFone prepaid phones sold under TracFones marks. Further, TracFone alleges a variety of tortious acts by Defendants pursuant to the conspiracy including but not limited to trademark infringement, copyright infringement and tortious interference.

Thus, the Court finds that TracFone's use of the phrase "Defendants and/or their co-conspirators" satisfies the pleading requirements of *Twombly* and will not serve as grounds for dismissal of TracFone's complaint.

The Court now turns to the specific arguments set forth by Defendants with respect to each count in the complaint.

### a. Trademark–Related Claims (Counts One, Two and Four)

Defendants first assert that TracFone has failed to state a claim for trademark infringement (count one), federal unfair competition (count two), and contributory trademark infringement (count four). Specifically, Defendants contend that TracFone's complaint alleges in conclusory fashion that unnamed third parties sell reflashed or unlocked TracFone Wireless Phones as a part of the alleged bulk resale scheme, but does not allege any facts that

would tie these acts to Defendants. Thus, Defendants argue, TracFone's complaint fails to allege facts sufficient to support claims of infringement or unfair competition.[4]

In order to state a claim for trademark infringement or unfair competition under the Lanham Act, TracFone must demonstrate that (1) it has a valid, protectable mark, and (2) Defendants' use of the mark is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. §§ 1114(1) & 1125(a); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1216 (11th Cir. 2000) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir.1997)). In evaluating whether a likelihood of confusion exists, the Eleventh Circuit requires courts to look to the following factors: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and the defendant; (4) the similarity of the sales methods; (5) the similarity of the advertising methods; (6) the defendant's intent, e.g., whether the defendant hopes to gain a competitive advantage by associating his product with plaintiff's established mark; and (7) actual confusion. *Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir.2000).

Contrary to Defendants' contentions, TracFone has successfully stated claims for trademark infringement, unfair competition, and contributory trademark infringement. TracFone alleges that it is the owner of a variety of federally registered and unregistered trademarks used in commerce on its prepaid phones and that Defendants and/or their co-conspirators have purchased in bulk products bearing TracFone's marks. Additionally, TracFone alleges that before reselling these products, Defendants and/or their co-conspirators unlock or reflash the phones, thereby reselling a product that differs substantially from the phones lawfully bearing TracFone's marks. Having considered the seven factors enumerated by the Eleventh Circuit, the Court finds that the factual allegations in the complaint indicate that Defendants' acts are likely to cause confusion, mistake or deception. Thus, TracFone's complaint sufficiently raises the right to relief above the speculative level for TracFone's trademark-related claims, and counts one, two and four will not be dismissed.

### b. Copyright Infringement (Count Five)

Defendants next assert that TracFone has failed to assert a viable claim for copyright infringement. In addition to contending that TracFone has failed to allege the elements of a conspiracy (an argument the Court has previously rejected), Defendants assert that TracFone has failed to allege that any of TracFone's software have been copied.

---

4. Defendants assert that the complaint makes no mention of any conduct by Defendants with respect to the Net10 and Safelink marks and that the claims with respect to those marks should be dismissed. However, in paragraph 32 of the complaint, TracFone states that "[t]he Straight Talk Marks and Federal Trademark Registrations will collectively be referred to as the 'Marks.'" TracFone specifically identifies the Net10 and Safelink marks as federal trademark registrations and attaches to the complaint copies of the certificates of registration for these marks. The complaint goes on to use the "Marks" exclusively in describing Defendants alleged activities. Therefore, Defendants' argument with respect to the Net10 and Safelink marks is without merit, and the claims pertaining to these marks will not be dismissed.

■ In order to state a claim for copyright infringement under Title 17 of the United States Code, TracFone must allege ownership of a valid copyright and copying of the constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir.1996). TracFone has alleged both elements.

■ In paragraph 33 of the complaint, TracFone alleges that it owns a valid, registered copyright in the TracFone prepaid software. Further, in paragraph 95 of the complaint, TracFone alleges that "Defendants' and/or its co-conspirators' actions in improperly reflashing the federally copyrighted TracFone Prepaid Software, without TracFone's authority or consent, creates an unauthorized reproduction of the TracFone Prepaid Software." Thus, TracFone has successfully alleged a claim for copyright infringement. This claim will not be dismissed.

### c. Claims Under 17 U.S.C. § 1201 (Counts Six and Seven)

Defendants next challenge TracFone's claims under the Digital Millennium Copyright Act ("DMCA") for circumvention of copyrighted software protection systems (count six) and trafficking in circumvention technology (count seven).[5]

17 U.S.C. § 1201(a)(1) provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title [pertaining to copyrights]." Additionally, Section 1201(a)(2) provides that "[n]o person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that . . . is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title. . . ." Although these sections broadly provide liability for those who attempt to circumvent technological measures employed by or on behalf of copyright owners to protect their works, subsection 1201(D) provides the Librarian of Congress with the responsibility of promulgating rules outlining which classes of copyrighted works are exempted from the DMCA's protections. One such class of exempted copyrighted works is "[c]omputer programs in the form of firmware that enable wireless telephone handsets to connect to a wireless telephone communication network, when circumvention is accomplished for the sole purpose of lawfully connecting to a wireless telephone communication network." 71 Fed.Reg. 68,472, 68,476 (Nov. 27, 2006) (amending 37 C.F.R. § 201.40(b)).

■ Defendants contend that TracFone fails to adequately allege that there has been a violation of the Copyright Act, which Defendants contend is a necessary prerequisite for protection under the DMCA. *See Chamberlain Group, Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1202 (Fed.Cir.2004) ("We conclude that 17 U.S.C. § 1201 prohibits only forms of access that bear a reasonable relationship to the protections that the Copyright Act otherwise affords copyright owners."). However, the Court has already found that TracFone has asserted a cognizable claim of copyright infringement in count five. As a part of that claim, TracFone alleged that Defendants impermissibly created a copy of TracFone's proprietary software.

---

5. Defendants assert that TracFone's claims under the DMCA are impermissibly premised on the actions of unnamed co-conspirators even though the complaint fails to properly allege the elements of a conspiracy. The Court has already rejected this argument.

It is of no moment that these allegations are contained in count five, but not counts six and seven. Accordingly, Defendants' contention that TracFone has failed to allege that Defendants' circumvention efforts are related to a violation of the Copyright Act are entirely without merit.

Finally, Defendants contend that the conduct alleged in counts six and seven falls squarely within the exemption for circumventions accomplished for the sole purpose of lawfully connecting to a wireless telephone communication network. Defendants assert that TracFone's statement in paragraph 103 of the complaint that "Defendants engaged in this misconduct for the purpose of reselling the altered devices for a profit, and not for the sole purpose of lawfully connecting to a wireless telephone communication network" is a mere legal conclusion and should be disregarded. The Court disagrees. In this instance, it might be an improper legal conclusion for TracFone to aver that a particular exemption does not apply. However, TracFone's allegation that lawful connection to a wireless telephone network was not the sole purpose of Defendants' circumvention efforts is a factual allegation. This factual allegation is sufficient to overcome Defendants' argument that TracFone's DMCA claims fall within the scope of the subject exemption.

Additionally, Defendants' assertion that sale for profit is not expressly mentioned as removing the exemption is unpersuasive. The terms of the exemption indicate that the exemption only applies if the circumvention's *sole* purpose is for lawfully connecting to a wireless telephone communication network. Thus, the correct reading of the plain text of the exemption is that if the circumvention is for any purpose other than lawfully connecting to a wireless telephone communication network, the exemption does not apply. As

TracFone has pled that Defendants' activity was for purposes other than lawfully accessing a wireless network, TracFone has sufficiently alleged facts that indicate that Defendants' actions are not covered by the exemption.

Accordingly, the Court will not dismiss TracFone's claims in counts six and seven.

### d. Breach of Contract (Count Three)

Defendants next assert that TracFone's claim for breach of contract should be dismissed because TracFone fails to allege facts demonstrating that there was mutual assent, a necessary element for a breach of contract claim. Additionally, Defendants claim that they are bona fide purchasers for value as well as buyers in the ordinary course under O.C.G.A. §§ 11–2–403 and 11–1–201(9) and therefore cannot be encumbered by the restrictions placed on purchasers of TracFone's prepaid phones.

A plaintiff claiming breach of contract bears the burden of pleading "(1) the subject matter of the contract, (2) consideration, and (3) mutual assent by the parties to all of the contract terms." *Consol. Container Co. LP v. Package Supply & Equip. Co.*, No. 1:09–cv–1478–JOF, 2009 WL 3365949, *1 (N.D.Ga. Oct. 19, 2009) (citing *Broughton v. Johnson*, 247 Ga.App. 819, 819, 545 S.E.2d 370, 371 (2001)). If the plaintiff has successfully pled the existence of a contract, the plaintiff must then plead "(1) the breach and (2) 'the resultant damages to the party who has the right to complain about the contract being broken.'" *Id.* (quoting *Budget Rent–A–Car of Atlanta, Inc. v. Webb*, 220 Ga.App. 278, 279, 469 S.E.2d 712, 713 (1996)).

In this case, TracFone alleges that all of its prepaid phones are sold subject to terms and conditions that restrict and limit the sale and use of the phones. TracFone avers that these terms and conditions are set forth in printed inserts included in the

packaging of every such prepaid phone and are also available to the public on TracFone's website. Additionally, TracFone asserts that the terms and conditions are referenced in printed warnings that are placed on the outside of the phones' retail packaging. TracFone asserts that the terms and conditions along with the language contained on the packaging constitute a valid binding "shrink-wrap" contract between TracFone and the purchaser.[6]

In arguing that TracFone's breach of contract claim should be dismissed, Defendants first contend that TracFone fails to allege facts indicating that they agreed to the terms and conditions found on TracFone's prepaid phones. They contend that the complaint does not allege that Defendants "ever even received, much less opened, the Plaintiff's packaging" that serves as the basis for the breach of contract claim. Defendants argue that as a result TracFone has not sufficiently alleged mutual assent, a necessary element under any contract theory, including the "shrink-wrap" theory upon which Defendants rely. *See, e.g., SoftMan Prods. Co. v. Adobe Sys. Inc.,* 171 F.Supp.2d 1075, 1087 (C.D.Cal.2001) (holding that in a case involving a shrink-wrap contract included with a computer program, the consumer can only be considered to have consented to the agreement when he loads the program and begins the installation process); *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1452–53 (7th Cir.1996) (holding that terms of a shrink-wrap agreement included with computer software are binding on the consumer only after the consumer has an opportunity to read the terms and reject them by returning the product). The Court disagrees with Defendants.

■ TracFone's complaint contains detailed allegations regarding the terms and conditions that are included with its prepaid phones. Further, TracFone alleges that these terms and conditions can be found inside the packaging of its phones and are referenced on the external packaging of the phones. Paragraph 58 of the complaint alleges that Defendants and/or their co-conspirators solicited "runners" to purchase large quantities of TracFone prepaid phones from retailers including Target, Wal–Mart and Sam's Club for sale to Defendants. Finally, the complaint alleges that Defendants and/or their co-conspirators would remove the phones from their original packaging and ship them outside of the United States. The Court finds that these factual allegations, taken in total, sufficiently raise a reasonable expectation that discovery will reveal evidence that Defendants were aware of the terms and conditions, given an opportunity to reject these terms, and failed to do so such that Defendants assented to the terms of the contract. Thus, TracFone has sufficiently alleged facts regarding mutual assent and thereby stated a claim for relief for breach of contract that is plausible on the facts alleged in the complaint.

Defendants also contend, with limited explanation and no legal support, that they qualify as bona fide purchasers for value as well as buyers in the ordinary course and that they therefore are free of the restrictions outlined in the terms and conditions found on TracFone's prepaid phones. However, both of these defenses require that Defendants acted in good

---

**6.** In their motion to dismiss, Defendants correctly note in passing that Georgia courts have yet to recognize the shrink-wrap contract theory. However, Defendants provide no arguments as to why the shrink-wrap contract theory should not be recognized under Georgia law. Therefore, the Court will not address at this time the enforceability of shrink-wrap contracts under Georgia law.

faith. *See* O.C.G.A. § n–2–403(a) ("A person with voidable title has power to transfer a good title to a *good faith* purchaser for value.") (emphasis added); O.C.G.A. § 11–1–201 (" 'Buyer in the ordinary course of business' means a person that buys goods in *good faith* without knowledge that the sale violates the rights of another person in the goods ....") (emphasis added). TracFone alleges that Defendants purchased its prepaid phones with the intent to violate the terms and conditions by unlocking or reflashing the phones and selling them outside of TracFone's service area. Thus, TracFone's allegations indicate that Defendants did not act in good faith and therefore are not entitled to the protections afforded by these defenses. Consequently, the Court will not dismiss TracFone's breach of contract claim.

### e. Tortious Interference (Count Eight)

Defendants next challenge the sufficiency of TracFone's claim for tortious interference with contractual rights and business relations. They assert that TracFone fails to properly identify any contract or business relation with which they have allegedly interfered. Additionally, Defendants contend that TracFone's complaint fails to allege that the actions taken by Defendants were wrongful and malicious, a necessary element to a claim for tortious interference.

■ Tortious interference with contract and tortious interference with business relationships are two separate but related claims. *See Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1407 (11th Cir.1998) (citing *Renden, Inc. v. Liberty Real Estate Ltd. P'ship III*, 213 Ga.App. 333, 334, 444 S.E.2d 814, 817 (1994)). The two claims share the following elements:

(1) improper action or wrongful conduct by the defendant without privilege; (2)

the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third-parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Id.* at 1407–08 (citing *Disaster Servs. Inc. v. ERC P'ship*, 228 Ga.App. 739, 740, 492 S.E.2d 526, 528 (1997)).

In support of their argument that TracFone fails to allege any contract or business relationship with which Defendants allegedly interfered, Defendants point to paragraph 117 of the complaint, in which TracFone alleges that "[u]pon information and belief, Defendants induced a breach of contractual obligations and/or caused a third party to discontinue or fail to enter into an anticipated business relationship With TracFone." Defendants contend that this paragraph's use of "and/or" indicates that TracFone is incapable of identifying whether Defendants allegedly interfered with a business relationship or a contractual relationship.

■ While the Court agrees that this single paragraph of TracFone's complaint may lack details, the Court finds that when read in conjunction with the remainder of the complaint TracFone has stated a claim for tortious interference with contract and/or business relationships. In paragraph 68, TracFone alleges that Defendants' conduct as participants in the bulk resale scheme has substantially harmed TracFone's relationship with retailers and consumers by precluding TracFone from supplying a sufficient stock of handsets to satisfy the demand from legitimate consumers. Thus, TracFone contends that it loses potential customers to competing wireless providers. Additionally, as

TracFone correctly contends, in alleging that Defendants and their co-conspirators solicit runners to purchase large amount of phones, Defendants are knowingly requesting that the runners enter into binding contracts with TracFone for the sole purpose of later breaching those agreements. Thus, the complaint properly alleges facts identifying contractual and business relationships with which Defendants' actions interfered.

■ Additionally, Defendants' argument that TracFone fails to properly allege that Defendants' actions were wrongful and malicious is without merit. Malice in the tortious interference context is defined as "any unauthorized interference, or any interference without legal justification or excuse." *Arford v. Blalock,* 199 Ga. App. 434, 441, 405 S.E.2d 698, 704 (1991). As detailed above, the complaint alleges that Defendants actively solicited runners to purchase a variety of specific brands and models of TracFone prepaid phones and that these phones all carried with them terms and conditions on and within their packaging. Further, TracFone alleges that Defendants solicited the runners to purchase these phones for the sole purpose of reflashing/unlocking the phones and reselling them in direct violation of the terms and conditions. These allegations sufficiently indicate that Defendants' conduct giving rise to the interference with busi-

ness and contractual relations claim were taken without legal justification or excuse. Thus, TracFone has alleged facts that raise the right to relief above the speculative level, and the Court will not dismiss this claim.

**f. Conspiracy to Induce Breach of Contract and Civil Conspiracy in Violation of Georgia Common Law (Counts Nine and Ten)**

■ Defendants next assert that TracFone's claims for conspiracy to induce breach of contract (count nine) and civil conspiracy in violation of Georgia common law (count ten) should be dismissed. As discussed above, the Court finds these arguments lack merit and concludes that TracFone has sufficiently alleged facts that raise the right to relief on the basis of a conspiracy above the speculative level. The complaint alleges that Defendants and their co-conspirators agreed to engage in the bulk resale scheme, giving rise to TracFone's claims for trademark infringement, copyright infringement, breach of contract, tortious interference with business relationships and various other claims.[7] Thus, TracFone has alleged a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. Accordingly, the Court will not dismiss TracFone's conspiracy claims.[8]

7. The Court notes that Defendants find fault in the fact that count nine does not allege that other co-conspirators were involved in the conduct and that count ten fails to identify by name any co-conspirators. However, both conspiracy claims are alleged against all three Defendants, thereby implicitly making each Defendant as a co-conspirator of the others. Further, the complaint is replete with allegations that Defendants and their co-conspirators engaged in a variety of actions giving rise to this suit. Thus, when the complaint is read as a whole, Defendants' arguments are without merit.

8. As noted above, there is no civil cause of action for conspiracy. Rather, where a separate cause of action for tortious conduct is alleged, the existence of a conspiracy makes any actionable misconduct by one conspirator chargeable to the other conspirators. *See Kipperman v. Onex Corp.,* 411 B.R. 805, 870 (N.D.Ga.2009); *Instrument Repair Serv., Inc. v. Gunby,* 238 Ga.App. 138, 141, 518 S.E.2d 161, 164 (1999); *Cook v. Robinson,* 216 Ga. at 330, 116 S.E.2d at 745. However, Defendants do not seek to dismiss TracFone's conspiracy claim on this ground, and the Court will not make Defendants' argument for them.

### g. Unjust Enrichment (Count Thirteen)

Defendants assert that TracFone's claim for unjust enrichment should be dismissed on two grounds. First, TracFone has failed to allege a benefit to the Defendants, an element key to an unjust enrichment claim. Second, to the extent Defendants purchased TracFone's equipment, they did so as bona fide purchasers for value and without notice.

■ "The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Cochran v. Ogletree*, 244 Ga.App. 537, 538–39, 536 S.E.2d 194, 196 (2000); *see also Smith v. McClung*, 215 Ga.App. 786, 789, 452 S.E.2d 229, 232 (1994).

■ Defendants' first argument is that the complaint fails to allege that Defendants received a benefit from their conduct. The Court disagrees. The complaint alleges that TracFone has invested significant resources in the advertising, promotion and sale of its goods under its marks. Additionally, the complaint avers that Defendants have derived substantial profits from their improper use of the marks via the bulk resale scheme. These allegations, in addition to the factual allegations set forth in the remainder of the complaint, sufficiently allege that TracFone's efforts have conferred a benefit on Defendants due to their inequitable use of TracFone's products. Without reaching the question of whether TracFone will succeed on this claim, the Court finds that TracFone has alleged facts sufficient to support its claim for unjust enrichment.

Additionally, for the same reasons as discussed above with respect to TracFone's claim for breach of contract, Defendants' argument that it is a bona fide purchaser requires a showing of good faith. However, TracFone's allegations indicate that Defendants' actions were not in good faith.

Thus, TracFone has stated a claim for unjust enrichment for which relief can be granted.

### h. Common Law Unfair Competition (Count Eleven), Unfair Competition (State) (Count Twelve), and Deceptive Trade Practices (Count Fourteen)

Defendants' final argument is that TracFone's claims for common law unfair competition, unfair competition (state), and deceptive trade practices should be dismissed because the complaint fails to allege that Defendants knew the products that they allegedly purchased and resold were TracFone's products or bore TracFone's marks. Defendants' arguments are without merit.

As Defendants correctly acknowledge, although these three claims sound in both statute and common law, all of the claims are based on the premise that Defendants intentionally used TracFone's marks in the sale of products, resulting in customer confusion and harm to TracFone. *See, e.g.,* O.C.G.A. § 23–2–55; *Morton B. Katz & Assocs., Ltd. v. Arnold,* 175 Ga.App. 278, 279, 333 S.E.2d 115, 116 (1985); *Kay Jewelry Co. v. Kapiloff,* 204 Ga. 209, 216, 49 S.E.2d 19, 24 (1948); O.C.G.A. § 10–1–372.

■ Thus, in order for TracFone to successfully allege these causes of action, TracFone must allege that Defendants used its marks in the sale of products resulting in customer confusion. As discussed above in evaluating TracFone's Lanham Act claims, the complaint properly alleges that Defendants are knowing and willing participants in an enterprise that resells unlocked or reflashed

TracFone prepaid phones under TracFone's marks. While Defendants set forth a series of arguments about details that TracFone "should" have included in the complaint, all of these arguments are properly construed as defenses that Defendants can assert at the summary judgment or trial stage. TracFone has no obligation to anticipate these defenses in their complaint, but is merely required to allege intentional use of its marks by Defendants and customer confusion. TracFone's complaint, as construed in a light most favorable to TracFone, properly alleges that Defendants and/or their co-conspirators unlawfully purchased TracFone's prepaid phones and then resold them under TracFone's marks. Thus, TracFone has properly stated claims for common law unfair competition, unfair competition (state), and deceptive trade practices, and these claims will not be dismissed.

### B. Motion to Strike

In their motion to strike [16], Defendants assert that TracFone improperly attached to its complaint a number of consent judgments from cases in which TracFone and other cell phone providers have sought relief similar to the relief sought in this case based on substantially similar conduct. Defendants ask the Court to strike Exhibit D to the complaint and paragraphs 72 through 74 of the complaint, in which TracFone references the attached consent judgments.

Motions to strike are governed by FED.R.CIV.P. 12(f). "Upon motion made by a party before responding to a pleading ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED.R.CIV.P. 12(f). "Rule 12(f) reflects the inherent power of the Court to prune down pleadings so as to expedite the administration of justice and to prevent abuse of its process." *McNair v. Monsanto Co.*, 279 F.Supp.2d 1290, 1298 (M.D.Ga.2003) (citations omitted). Motions to strike are generally viewed with disfavor and are "often considered time wasters." *Tingley Sys. Inc. v. Bay State HMO Mgmt. Inc.*, 833 F.Supp. 882, 884 (M.D.Fla.1993) (quotations omitted). "A motion to strike is a 'drastic remedy to be resorted to only when required for the purposes of justice ... [and] should be granted only when the pleading to be stricken has no possible relation to the controversy.'" *Stephens v. Trust for Pub. Land*, 479 F.Supp.2d 1341, 1346 (N.D.Ga. 2007) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia County*, 306 F.2d 862, 865 (5th Cir.1962)).

The Court finds that the consent judgments attached as Exhibit D to the complaint have some possible relation to the controversy, as they involve substantially similar activity and similar parties. The Court makes no finding as to the persuasive value of the consent judgments, but finds that TracFone's inclusion of these judgments does not warrant the severe sanction of striking them or paragraphs 72 through 74 of the complaint. Thus, the Court will deny the motion to strike.

### III. Conclusion

For the foregoing reasons, the Court hereby GRANTS Defendants' motion for leave to file excess pages [17] and DENIES Defendants' motion to dismiss [15] and motion to strike [16].